1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

LON MARTIN AKA LON MILLER,

                    Plaintiff,

   v.

KENNETH QUINN,

                    Defendant.

No. C08-5344RJB-KLS

REPORT AND RECOMMENDATION

Noted for August 13, 2010

12
13
14
15
16
17
18
19
20
21
22

      Petitioner is a state prisoner currently incarcerated at the Monroe Correctional Complex, located in Monroe, Washington.  This matter is before the Court on his amended petition for writ of *habeas corpus* filed with this Court pursuant to 28 U.S.C. § 2254. (Dkt. #34).  Respondent has answered the petition and filed the relevant state court records. (Dkt. #50-#51).  Petitioner has filed a response to respondent's answer (Dkt. #61) and provided the Court with additional state court records (Dkt. #57 and #59).  Petitioner also separately has filed a motion for evidentiary hearing and to expand the record (Dkt. #69), to which respondent has responded, and which shall be dealt with below along with the merits of petitioner's petition, as well as a motion for leave to conduct discovery (Dkt. #79).[1]  This matter, therefore, is now ripe for review and a decision by the Court.

23

                FACTUAL AND PROCEDURAL HISTORY

24
25

      Petitioner was sentenced on June 22, 1998, to a total prison term of 412 months by the

26

---

[1] Although petitioner has requested oral argument on his motion for evidentiary hearing and to expand the record and on his motion for leave to conduct discovery, the undersigned finds such argument to be unnecessary here.

REPORT AND RECOMMENDATION - 1

Kitsap County Superior Court, after having been convicted of first and second degree murder by jury verdict. (Dkt. # 51, Exhibit 2, pp. 1-2).  The Washington State Court of Appeals summarized the relevant facts of this case as follows:

> Brian Johnson lived with his grandfather, Robert Mussman, in Kitsap County.  In approximately late April or the beginning of May 1996, Johnson drove his truck away from his grandfather's house and never returned. Shortly after Johnson left, Mussman, who was a former police officer, discovered that several of his firearms had been taken without permission. Johnson's body was discovered the next fall, at a Mason County tree farm under a pile of brush.  No hand bones were recovered.  Johnson was identified from dental records.  The cause of death was determined to be blunt force injuries to the head and stab wounds to the chest.

> In February 1997, [Martin]'s step-father, Richard [Martin], was visiting Kitsap County from Florida.  Richard met [Martin], [Martin]'s step-brother Dustin and [Martin]'s friend Keith Iaea.  According to Richard, [Martin] said he collected drug debts for his living, and killed people if they did not pay.  [Martin] described killing a man who had stolen some guns.  He said they had cut parts of the body off so it could not be found all in one place, and the he and Iaea were concerned because the victim's grandfather was a former police officer.  Richard later saw Johnson's name in the newspaper, and told police what [Martin] had said.

> Kitsap County police were at the time obtaining information about burglaries from a woman named Dolores Bedilion.  They asked her if she knew Johnson.  Bedilion, who owned a business near Dustin [Martin]'s apartment, told police that she knew Johnson had been killed and that [Martin] and Iaea had done it.  At trial Bedilion testified that she was using methamphetamine in a bedroom in Dustin's apartment one evening when she heard an argument in the living room.  She ran out of the bedroom and watched as [Martin] and his friend Iaea beat and stabbed Johnson to death. [Martin] and Iaea had Bedilion help them cover up the crime by cleaning the apartment and driving Johnson's body in [Martin]'s van to a farm south of Port Orchard.  The men went into the barn.  At one point Bedilion looked inside at and saw Johnson's body hanging up and Iaea and [Martin] cutting it open and severing one of the hands.  [Martin] and Iaea then had Bedilion drive them and the body to an old tree farm, where they hid the body.

> Police arrested [Martin].  After advice of his constitutional rights, [Martin] first denied knowing what had happened to Johnson.  He then acknowledged a confrontation with Johnson, but said that he had only hit Johnson, who had walked out of Dustin's apartment afterward.  Eventually [Martin] told police that one of the voices he heard in his mind was responsible.  [Martin] said that "Jimmy," who could be mean sometimes, had used [Martin]'s body to kill Johnson and "gut him."

REPORT AND RECOMMENDATION - 2

Although [Martin] had been receiving mental health treatment from Dr. William Cagle[, M.D.], the defense declined to raise issues [sic] insanity or diminished capacity at trial.  Instead, [Martin] testified that he did not have anything to do with Johnson's death.  He acknowledged that Dustin sold methamphetamine but denied that he ever acted as an enforcer or killed anyone.  As for his statements to police, [Martin] testified that he began hearing voices in his head after his natural father died when [Martin] was a child.  When Richard [Martin] joined the family, he abused [Martin] and other children by beating them.  [Martin] told the jury about different personalities whose voices he heard, but denied that any of them had made him kill Johnson or that any of them ever took over his body.  He said he had only eventually told police that "Jimmy" had made him kill Johnson so police would stop interrogating him and he could go home and go to sleep.  [Martin] acknowledged that he once punched Johnson in front of some women after Johnson stole from Dustin, but denied that he hurt Johnson any other time.

The defense argued that the confession to police was coerced and unreliable, that no forensic evidence pointed toward [Martin], that Richard had testified falsely and that Bedilion and that [sic] other witnesses connected to Dustin's drug dealing were also untruthful.  [Martin] was convicted [of first and second degree murder.  The court sentenced only on first degree murder within the standard range].

(Dkt. #51, Exhibit 7, p. 1, Exhibit 15, pp. 2-4).

Petitioner appealed his conviction and sentence to the Washington State Court of Appeals, which on January 26, 2001, affirmed the conviction, but remanded the case to the trial court for re-sentencing due to an error in calculating petitioner's offender score. (Dkt. #51, Exhibit 3; Exhibit 7, p. 9-10, 12).  Petitioner filed a petition for review of the court of appeal's decision, which was denied by the Washington State Supreme Court on June 5, 2001. (Id., Exhibits 8, 10).  On July 11, 2001, petitioner was re-sentenced by the Kitsap County Superior Court to the high end of the standard range, a total of 398 months, consisting of 374 months in prison with a 24-month enhancement. (Id., Exhibit 1, pp. 2-3).

On July 8, 2002, petitioner filed a personal restraint petition with the Washington State Court of Appeals, which, on January 21, 2004, dismissed all but one of the claims raised in the petition. (Id., Exhibits 12, 14-15).  In regard to the remaining claim – in which petitioner alleged

REPORT AND RECOMMENDATION - 3

he "was denied his Sixth Amendment right to effective representation of counsel when his trial attorney failed to raise the issue of whether petitioner was competent to stand trial, and failed to request a competency evaluation" – the court of appeals referred it to the Kitsap County Superior Court for a determination on the merits. (Id., Exhibit 12, p. 27, Exhibit 15).  Petitioner's motion for discretionary review of the court of appeals' decision, which was filed with the Washington State Supreme Court on February 11, 2004, was denied by the Washington State Supreme Court Commissioner on April 5, 2004. (Id., Exhibits 16, 18).

On February 16, 2005, the Kitsap County Superior Court entered Findings of Fact and Conclusions of Law and an Order denying relief on petitioner's remaining claim, following a two-day evidentiary hearing held on that claim. (Id., Exhibits 20 and 33).  Petitioner appealed those Findings of Fact and Conclusions of Law, but on August 15, 2006, the Washington State Court of Appeals affirmed them. (Id., Exhibits 21-22, 25).  Petitioner filed a petition for review of the court of appeals' decision, which the Washington State Supreme Court denied on July 10, 2007. (Id., Exhibits 26-27).  On July 25, 2007, the court of appeals issued its mandate in this matter. (Id., Exhibit 28).

Petitioner filed his petition for writ of federal *habeas corpus* relief with this Court on May 30, 2008. (Dkt. #1).  On June 16, 2009, petitioner filed an amended petition, in which he raised the following seven grounds for relief:

> ***Ground one:*** Mr. Martin was denied his Fourteenth Amendment right to due process of law when the trial judge failed to order a competency evaluation and hearing despite evidence of Mr. Martin's mental illness and its symptoms.
> . . .
> ***Ground two:*** Mr. Martin was denied his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments when trial counsel failed to adequately investigate whether Mr. Martin was competent to stand trial, failed to raise Mr. Martin's competency with the trial court, and failed to request a competency evaluation.

REPORT AND RECOMMENDATION - 4

. . .

**Ground three:** Mr. Martin was denied his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments when his trial attorney failed to present testimony by Mr. Martin's treating psychiatrist, or any other mental health expert, at the pretrial hearings on the admissibility of Mr. Martin's statement to [the] Bremerton police.

. . .

**Ground four:** Mr. Martin was denied his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments when his trial attorney failed to present testimony by Mr. Martin's treating psychiatrist, or any other mental health expert, at trial to explain why Mr. Martin's statement to [the] Bremerton police was not reliable.

. . .

**Ground five:** Counsel's failure to present evidence of Mr. Martin's serious mental illness as a mitigating factor at sentencing deprived Mr. Martin of his right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments.

. . .

**Ground six:** Mr. Martin was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments when he was represented at trial by an attorney whose law firm had previously represented the prosecution's key witness.

. . .

**Ground seven:** Mr. Martin was denied due process under the Fourteenth Amendment when the State knowingly withheld material exculpatory evidence.

(Dkt. #34, pp. 10-14).

There is no issue of timeliness concerning the filing of petitioner's federal *habeas corpus* petition with the Court. While there are issues with respect to the exhaustion of state remedies concerning the claim contained in ground seven and one of the claims contained in ground two noted above, as explained below, it appears the state's highest court now would find those claims to be procedurally barred. Therefore, after carefully reviewing the petition, the parties' briefing on the merits, petitioner's motion for evidentiary hearing and to expand the record and the parties arguments with respect thereto, and the relevant state court records, the undersigned recommends that the Court deny the petition for the reasons set forth below.

REPORT AND RECOMMENDATION - 5

## EVIDENTIARY HEARING AND EXPANSION OF THE RECORD

"Under [28 U.S.C. § 2254(e)], a district court presented with a request for an evidentiary hearing . . . must determine whether a factual basis exists in the record to support the petitioner's claim." Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999).   If that factual basis does not exist, "and an evidentiary hearing might be appropriate," the district court's "first task" then "is to ascertain whether the petitioner has 'failed to develop the factual basis of [the] claim in State court.'" Id. (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998), *overruled on other grounds*, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)).   If the petitioner "has failed to develop the factual basis of [that] claim in State court proceedings," the district court "shall not hold  an evidentiary hearing" thereon, unless the petitioner shows that:

> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The district court also may "expand the record without holding an evidentiary hearing" pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts ("Rule 7"), thereby enabling disposal of some petitions "without the time and expense required for an evidentiary hearing." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005); Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Notes; see also Libberton v. Ryan, 583 F.3d 1147, 1165 (9th Cir. 2009).

REPORT AND RECOMMENDATION - 6

Before the record may be expanded pursuant to Rule 7, however, the same standards set forth in

28 U.S.C. § 2254(e)(2) and discussed herein in regard to granting an evidentiary hearing must be

satisfied. Libberton, 583 F.3d at 1165.

The phrase "failed to develop" contained in 28 U.S.C. § 2254(e)(2) "implies some lack of

diligence" on the petitioner's part. Williams v. Taylor, 529 U.S. 420, 430-31 (2000) (noting §

2254(e)(2) directs attention to petitioner's efforts in state court). Thus, "a failure to develop the

factual basis of a claim is not established unless there is lack of diligence, or some greater fault,

attributable to the [petitioner] or the [petitioner's] counsel." Id. at 432. As explained in greater

detail by the Supreme Court in Williams:

> . . . The question is not whether the facts could have been discovered but
> instead whether the [petitioner] was diligent in his efforts. The purpose of the
> fault component of "failed" is to ensure the prisoner undertakes his own
> diligent search for evidence. Diligence for purposes of [28 U.S.C. §
> 2254(e)(2)] depends upon whether the [petitioner] made a reasonable attempt,
> in light of the information available at the time, to investigate and pursue
> claims in state court; it does not depend . . . upon whether those efforts could
> have been successful. Though lack of diligence will not bar an evidentiary
> hearing if efforts to discover the facts would have been in vain, see §
> 2254(e)(2)(A)(ii), and there is a convincing claim of innocence, see §
> 2254(e)(2)(B), only a prisoner who has neglected his rights in state court need
> satisfy these conditions.
>
> . . .
>
> . . . For state courts to have their rightful opportunity to adjudicate federal
> rights, the [petitioner] must be diligent in developing the record and
> presenting, if possible, all claims of constitutional error. If the [petitioner]
> fails to do so, himself or herself contributing to the absence of a full and fair
> adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to
> develop the relevant claims in federal court, unless the statute's other stringent
> requirements are met. Federal courts sitting in habeas are not an alternative
> forum for trying facts and issues which a [petitioner] made insufficient effort
> to pursue in state proceedings. Yet comity is not served by saying a
> [petitioner] "has failed to develop the factual basis of a claim" where he was
> unable to develop his claim in state court despite diligent effort. In that
> circumstance, an evidentiary hearing is not barred by § 2254(e)(2).

REPORT AND RECOMMENDATION - 7

529 U.S. at 435, 437.  Accordingly, "[i]f there has been no lack of diligence at the relevant stages

in the state proceedings, the [petitioner] has not 'failed to develop' the facts under § 2254(e)(2),"

and he or she "will be excused from showing compliance with the balance of [that] subsection's

requirements." Id. at 437; see also Baja, 187 F.3d at 1078-79 (where petitioner has diligently

sought to develop factual basis of claim, but has been denied opportunity to do so by state court,

§ 2254(e)(2) will not preclude evidentiary hearing); Cooper-Smith, 397 F.3d at 1241 (exception

to application of § 2254(e)(2)'s requirements exists if petitioner exercised diligence in efforts to

develop factual basis of claims in state court proceedings).

As the Ninth Circuit has explained, "[t]he failure to investigate or develop a claim given

knowledge of the information upon which the claim is based is not the exercise of diligence."

Cooper-Smith, 397 F.3d at 1241 (citing Williams, 529 U.S. at 439-40).  Again, "the proper

question when considering a petitioner's diligence 'is not whether the facts could have been

discovered but instead whether the [petitioner] was diligent in his efforts.'" Libberton, 583 F.3d

at 1165 (quoting Williams, 539 U.S. at 435).  Subsection 2254(e)(2), therefore, "allows factual

development when a petitioner diligently attempts to develop the factual basis of a claim in state

court and is 'thwarted, for example, by the conduct of another or by happenstance was denied the

opportunity to do so.'" Williams v. Schriro, 423 F.Supp.2d 994, 1005 (D. Ariz. 2006) (quoting

Williams, 539 U.S. at 432).

"Absent unusual circumstances, diligence requires 'that the [petitioner], at a minimum,

seek an evidentiary hearing in state court in the manner prescribed by state law.'" Id. at 1006

(quoting Williams, 539 U.S. at 437).  But, "[i]f an evidentiary hearing is requested, a petitioner's

inability to persuade a state court to conduct such a hearing does not in itself demonstrate lack of

diligence." Id. (citing Cardwell, 152 F.3d at 338).  "A petitioner who has previously sought and

been denied an evidentiary hearing," therefore, "has not failed to develop the factual basis of his claim." <u>Stanley v. Schriro</u>, 598 F.3d 612, 624 (9th Cir. 2010).  In that case, "an evidentiary hearing . . . is required where the petitioner's allegations, if true, would entitle him to relief, and the petitioner has satisfied the requirements [the Supreme Court set forth in] *Townsend v. Sain*, 372 U.S. 293 (1963)." <u>Id.</u>

Under <u>Townsend</u>, the "district court *must* hold an evidentiary hearing . . . when the facts are in dispute if (1) the petitioner 'alleges facts which, if proved, would entitle him to relief,' and (2) the state court has not 'after a full hearing reliably found the relevant facts.'" <u>Williams</u>, 423 F.Supp.2d at 1006 (quoting <u>Townsend</u>, 372 U.S. at 312-13) (emphasis in original); <u>see also</u> <u>Stanley</u>, 598 F.3d at 624.  "In any other case in which the facts are in dispute and diligence has been established, the district court . . . 'has the power, constrained only by [its] sound discretion, to receive evidence bearing upon" the petitioner's claim. <u>Williams</u>, 423 F.Supp.2d at 1006 (quoting <u>Townsend</u>, 372 at 318).  On the other hand, where the petitioner "was afforded a full and fair hearing in state court, federal evidentiary hearings ought to be the exception, not the rule." <u>Pike v. Guarino</u>, 492 F.3d 61, 70 (1st Cir. 2007); <u>see also</u> <u>Townsend</u>, 372 U.S. at 318 (if petitioner was afforded full and fair hearing by state court resulting in reliable findings, district court may, and ordinarily should, accept state court's findings).

"Even when such a hearing is thought desirable, restraint should be the watchword." <u>Pike</u>, 492 F.3d at 70.  To that end, the district court must consider whether granting an evidentiary hearing "could enable [the petitioner] to prove the petition's factual allegations, which, if true, would entitle [the petitioner] to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).  In addition, "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in

deciding whether an evidentiary hearing is appropriate." Id.  Should one be granted, furthermore, the purpose of the evidentiary hearing "should be to fill a gap in the record or to supplement the record on a specific point," and "should not be used as an occasion for a retrial on the state court case." Pike, 492 F.3d at 70.  Thus, "[w]here . . . a federal district court . . . essentially replicates the entirety of the relevant state court evidentiary record, it is on very shaky ground." Id. (citing Thatsaphone v. Weber, 137 F.3d 1041, 1046 (8th Cir. 1998) ("[T]he district court went beyond its habeas authority when it heard testimony rehashing what occurred [in state court proceeding] and then reweighed the state court's findings of fact")).

As noted above, an evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief." Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998).  It "is *not* required on issues that can be resolved by reference to the state court record." Id. (emphasis in original).  As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." Id.; see also Schriro, 550 U.S. at 474 (if record refutes petitioner's factual allegations or otherwise precludes *habeas corpus* relief, district court is not required to hold evidentiary hearing."); United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) ("No evidentiary hearing is required . . . if the 'motion, files and records of the case conclusively show that the prisoner is entitled to no relief.") (quoting 28 U.S.C. § 2255).

Petitioner argues an evidentiary hearing and expansion of the record is appropriate in this case, because: (1) there is additional significant evidence that was not before the state courts, which provides further support for his first five grounds for federal *habeas corpus* relief; (2) he did not fail to develop the facts on those grounds in state court; (3) his allegations, if proven, would entitle him to *habeas corpus* relief; and (4) the state courts failed to reliably determine the

REPORT AND RECOMMENDATION - 10

relevant facts in regard to those claims.  The undersigned, however, agrees with respondent that no evidentiary hearing is required or warranted here.

First, the undersigned finds petitioner did not act diligently in developing the record in state court.  As noted by the Supreme Court in <u>Williams</u>, "diligence" for purposes of 28 U.S.C. § 2254(e)(2) depends on whether petitioner "made a reasonable attempt, *in light of the information available at the time*, to investigate and pursue claims in state court." 529 U.S. at 435 (emphasis added).  As noted above, the state trial court held a two-day evidentiary hearing in mid-February 2005, on the issue of whether petitioner had been denied effective assistance of counsel, when defense counsel failed to raise the issue of whether he was competent to stand trial and to request a competency evaluation.  In finding against petitioner on this issue, the trial court considered the state court record before it, including plaintiff's trial testimony, as well as testimony provided by defense counsel, the prosecution, the two mental health professionals who had treated petitioner both prior to and after his trial and conviction, members of petitioner's family, and documentary evidence from the above mental health professionals.

The additional evidence with which petitioner seeks to supplement the record before the Court, consists of a declaration from Richard Hansen, an attorney who has practiced in the area of criminal defense, a declaration of Rolf J. Kolden, M.D., one of the mental health professionals who began treating petitioner shortly after his arrival in prison following his conviction, and numerous additional treatment records from the period prior to and after his arrival in prison, including records from during the time he spent in the Kitsap County Jail. <u>See</u> (Dkt. #69-#70, #72).  But petitioner has failed to explain why he did not, or could not have, presented the two declarations earlier during the state court proceedings.  There is no indication, for example, that Mr. Hansen – or other similarly situated attorney, for that matter, with the same background

REPORT AND RECOMMENDATION - 11

and/or expertise – was unavailable at the time the state court evidentiary hearing was held.[2]  The

---

[2] Another reason for not admitting Mr. Hansen's declaration into the record is, as respondent points out, that it was sought for the purpose of rendering "an opinion as to whether . . . [defense] counsel's performance fell below an objective standard of reasonableness under the first part of the *Strickland[ v. Washington*, 466 U.S. 668 (1984)] standard" concerning the determination of ineffective assistance of counsel in federal court. (Dkt. #69-2, Declaration of Richard Hansen, p. 3).  Such legal determinations, however, are the province of the Court, not expert witnesses.  As the Ninth Circuit in United States v. Scholl, 166 F.3d 964 (9th Cir. 1999), *as amended*, has noted:

> [i]t is well settled that the judge instructs the jury in the law.  Experts "interpret and analyze factual evidence.  They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations."

Id. at 973 (citation omitted).  In other words, a determination calling "for a legal conclusion" – such as whether or not defense counsel provided ineffective assistance – "is [an] inappropriate matter for expert testimony." Id. (citing Aguilar v. International Longshoremen's Union, 966 F.2d 443, 447 (9th Cir. 1992) (matters of law are for court's determination, not determination of expert witness); Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2nd Cir. 1977) (expert testimony that consists of legal conclusions is inadmissible); see also Bonn v. Calderon, 59 F.3d 815, 838 (9th Cir. 1995) (because Federal Rule of Evidence 702 permits expert testimony if it will assist trier of fact, and because district court is qualified to assess likely responses of jury to certain evidence and to understand legal analysis required by Strickland, there was no abuse of discretion in district court concluding juror psychology expert would not be helpful).  The Eleventh Circuit also has succinctly explained the inappropriateness in allowing legal "expert" witness testimony when determining the issue of ineffective assistance of counsel:

> Permitting "expert" testimony to establish ineffective assistance is inconsistent with our recognition that the issue involved is a mixed question of law and fact that the court decides. We recently explained as much in *Provenzano v. Singletary*, a capital case in which the petitioner had offered the affidavit of an experienced criminal defense attorney (the Public Defender of Orange County, Florida) in an attempt to establish that the failure of trial counsel to seek a change of venue amounted to ineffective assistance of counsel. 148 F.3d 1327, 1331-32 (11th Cir. 1998).  In discussing why that affidavit was not enough to entitle the petitioner to an evidentiary hearing on ineffective assistance, we stated:
>
> > There is another more fundamental reason why Provenzano is not entitled to an evidentiary hearing on the reasonableness of his counsel's decision to forego a change of venue, regardless of any affidavit he may have proffered.  Our . . . decisions established that the reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof.  Accordingly, it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony.  It is a question of law to be decided by state courts, by the district court, and by this Court, each in its own turn.
>
> *Provenzano*, 148 F.3d at 1332.  Likewise, in the present case, whether a law firm rendered ineffective assistance of counsel because of a conflict of interest, under a given set of facts, is "a question to be decided by the district court, and by this Court, each in its own turn." *Provenzano*, 148 F.3d at 1332.  Thus it is not a matter subject to expert testimony.

Freund v. Butterworth, 165 F.3d 839, 863 n.34.  Petitioner cites two Ninth Circuit cases, noting that in one case, the Court of Appeals found it was not an abuse of discretion for the district court to have admitted expert testimony on the issue of ineffective assistance counsel (see Ainsworth v. Calderon, 138 F.3d 787, 791 (9th Cir. 1998) and in the other, it noted, without criticism, the district court's decision to allow such testimony (see id. (citing Thompson v. Calderon, 109 F.3d 1358, 1364 (9th Cir. 1996)).  Granted, the Ninth Circuit has not prohibited district courts from

REPORT AND RECOMMENDATION - 12

same is true with respect to Dr. Kolden, who actually testified in detail at the hearing and had

been seeing petitioner for some seven years at that point.

As for the bulk of the additional evidence petitioner has submitted (consisting primarily

of his prison treatment records), he again makes no showing that such evidence could not have

been presented earlier to the state courts during the proceedings on this matter.  At the very least,

petitioner – who it should be noted appears to have been ably represented by legal counsel at the

state court evidentiary hearing – should have been able to present those prison medical and other

records to the state trial court at that hearing.  That is, the undersigned finds nothing in the record

before the Court indicating that anything other than petitioner's own failure to do so, prevented

this evidence from being made available to the state courts.  Indeed, the record fails to show

petitioner made even the minimal requirement to establish diligence for 28 U.S.C. § 2254(e)(2)

purposes, by requesting a state court evidentiary hearing.[3]

Petitioner argues he attempted to develop the underlying facts for his first five grounds

for *habeas corpus* relief in state court, noting that he did present evidence to establish the facts

entitling him to relief on those grounds.  Petitioner further argues the Washington State Court of

Appeals "'refused to give him an opportunity to develop more evidence and rejected his claims

---

admitting such testimony, as discussed above, it is not favored, and in any event, as the cases cited by petitioner show, the decision as to whether or not attorney expert testimony should be admitted is within the sound discretion of the district court.  In this case, for the reasons discussed above, the undersigned finds Mr. Hanson's declaration would not aid the Court in its resolution of the legal questions at issue here.

[3] It seems the Washington State Court of Appeals decided to remand the matter for an evidentiary hearing to the state trial court on its own, due to the fact that "material disputed questions of fact" existed as to petitioner's "communications with his [defense counsel] about his mental state," and not because petitioner himself requested one. (Dkt. #51, Exhibit 15, p. 1; see also Id., Exhibit 12 (petitioner's personal restraint petition).  Petitioner argues that for purposes of determining why the factual record has not been fully developed, there is a "material distinction" between the "failure to seek or seize an opportunity to present evidence" on the part of the petitioner, and the petitioner's "inability to persuade a state court that an evidentiary hearing is required." (Dkt. #76, p. 2 (quoting Cardwell, 152 F.3d at 338).  While it is true, as discussed above, that the latter situation " does not in itself demonstrate lack of diligence" (see Williams, 423 F.Supp.2d at 1006 (citing Cardwell , 152 F.3d at 338), petitioner himself at a minimum still must request an evidentiary hearing to be found to have acted diligently in attempting to develop the record.  Also as discussed above, petitioner has failed to do so in this case.

REPORT AND RECOMMENDATION - 13

on the merits,'" thus denying him relief on those claims without a hearing in what amounted to "'a curtailed proceeding at the state level.'" (Dkt. #69, p. 9, citing Dkt. #51, Exhibit 15, and quoting Libberton, 583 F.3d at 1165, and Baja, 187 F.3d at 1079). The undersigned finds this argument to be unpersuasive, and therefore rejects it.

First, Libberton is distinguishable on its facts. In that case, the petitioner had "repeatedly asked the state court to grant an evidentiary hearing in which he could develop the facts relating to his [ineffective assistance of counsel] claim," which "were consistently rejected by the state court." 583 F.3d at 1165; see also West v. Ryan, --- F.3d ---, 2010 WL 2303337 *6 (9th Cir. 2010) (petitioner sought hearing and funding for experts on more than one occasion in effort to develop his claim). As discussed above, petitioner never even requested an evidentiary hearing on his second ground for *habeas corpus* relief, let alone in regard to his first, third, fourth and fifth grounds as well. The Ninth Circuit's decision in Baja also does not help petitioner here. In that case, the Court of Appeals held in relevant part as follows:

> [The petitioner] presented his claim of ineffective assistance of counsel to the state court by way of a personal restraint petition. The petition was denied by the state Court of Appeals on the ground that he failed to present a prima facie case of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The [Washington State] Court of Appeals apparently did not review evidence from the trial or consider additional evidence outside the record, because [the petitioner] failed to come forward with evidence of a colorable claim. The Washington [State] Supreme Court denied [the petitioner's] motion for discretionary review of the appeals court's decision on the same grounds.

> In the absence of any evidentiary hearing or consideration of additional evidence presented on appeal to the state courts, no factual basis for [the petitioner's] ineffective assistance of counsel claim was developed. *See, e.g., United States v. Sitton*, 968 F.2d 947, 960 (9th cir. 1992) ("Ineffective assistance claims are ordinarily reviewed only in collateral proceedings because such claims usually cannot be resolved without the development of facts outside the original record.").

> . . .

REPORT AND RECOMMENDATION - 14

1

2

3

4

5

6

7

8

9

10

The state Court of Appeals properly found that, with respect to the claim of ineffective assistance of counsel presented in the personal restraint petition, Baja could make a prima facie case by supporting his allegation with evidence in the record, or by demonstrating that there was competent, admissible evidence with respect to facts outside the record that would support his allegations. *See In re Rice*, 118 Wash.2d 876, 828 P.2d 1086, 1092 (1992) ("As a threshold matter, the petitioner must state in his petition the facts underlying the claim . . . and the evidence available to support the factual allegations . . . [P]etitioner must state with particularity facts which, if proven, would entitle him to relief."). State law not only permitted but required Baja to come forward with affidavits or other evidence, to the extent that his claim relied on evidence outside the trial record. Clearly, Baja had the opportunity in state proceedings to come forward with evidence to support his allegation that Counsel was ineffective at trial, but failed to do so. He therefore failed to develop the factual basis of his claim in state court proceedings within the meaning of 28 U.S.C. § 2254(e).

11

12

13

187 F.3d at 1078-79. As with the petitioner in <u>Baja</u>, petitioner here "has not explained why the evidence needed to support his [claims] could not have been developed during the course of the state court proceedings." <u>Id.</u> at 1079.

14

15

16

17

18

19

20

21

22

Petitioner also cites <u>Jones v. Wood</u>, 114 F.3d 1002 (9th Cir. 1997), as well as the First Circuit's decision in <u>Pike</u> to support his argument. <u>Jones</u> is inapposite. In that case, the Ninth Circuit noted that the petitioner did not develop the facts on his claim in state court because he "was never given the opportunity to do so," as the Washington State Court of Appeals dismissed his personal restraint petition containing his claim "without a hearing." <u>Jones</u>, 114 F.3d at 1012. But it seems the problem in <u>Jones</u> was not that he was not given an <u>evidentiary</u> hearing, but that no "hearing" at all was provided on the merits of his claim.[4]

23

24

25

26

---

[4] This is made clear by the Ninth Circuit in its decision when it stated as follows:

Further, the Washington state courts would not have permitted him to rely on extra-record material in arguing his ineffective assistance claim. *State v. McFarland*, 127 Wash.2d 322, 899 P.2d 1251, 1257 (1995). Because extra-record material is frequently crucial in determining the merit of such claims, *see, e.g., United States v. Sitton*, 968 F.2d 947, 960 (9th Cir. 1992) ("Ineffective assistance claims are ordinarily reviewed only in collateral proceedings because such claims usually cannot be resolved without the development of facts outside the original record."), he hardly could have fully developed the facts on direct appeal.

REPORT AND RECOMMENDATION - 15

1   In Pike, once again, unlike in this case the petitioner there actively sought an evidentiary

2   hearing. See 492 F.3d at 69. It is true that the Ninth Circuit in Pike stated that the petitioner "did

3   not fail to develop the factual basis for her claims because the key *facts* . . . were presented to the

4   state court (albeit in lesser detail)," and "[t]hus, a federal evidentiary hearing was not statutorily

5   prohibited." Id. (emphasis in original). It also is true that the Court of Appeals went on to state

6   that "[t]he exact manner in which [the petitioner] elected to make the point [was] less important

7   than the fact that she did make the point," as "her proffer went directly to the merits of the claims

8   

9   _____

The only vehicle by which he could have brought material outside the record to the court's attention was by way of a personal restraint petition. *McFarland*, 899 P.2d at 1258.

Id. at 1012-13. This explanation only makes sense if the state court had denied the petitioner's personal restraint petition without any hearing on the merits, since, as is made clear above, Washington state law expressly permits development of the record by way of the filing of such a petition. See also Earp v. Ornoski, 431 F.3d 1158, 1169 (9th Cir. 2005) (finding petitioner had never received opportunity to develop record, because state court denied his claim without hearing, evidentiary or otherwise, or opinion).

Nor does the undersigned find, as asserted by petitioner, that he was denied a hearing on the merits of his claims. In its decision partially dismissing his personal restraint petition, the Washington State Court of Appeals expressly found his first, third, fourth and fifth claims were "all clearly without merit." (Dkt. #51, Exhibit 15, p. 1). In other words, petitioner had not made a *prima facie* case with respect to those claims. In Washington, reviewing courts have "three options" when evaluating such petitions:

    1) If a petitioner fails to meet the threshold burden of showing actual prejudice arising from constitutional error, the petition must be dismissed;

    2) If a petitioner makes at least a prima facie showing of actual prejudice, but the merits of the contentions cannot be determined solely on the record, the court should remand the petition for a full hearing on the merits or for a reference hearing . . .

    3) If the court is convinced a petitioner has proven actual prejudicial error, the court should grant the Personal Restrain Petition without remanding the cause for further hearing.

Hews v. Evans, 99 Wn.2d 80, 88 (1983). Here, the court of appeals chose the first option in regard to those claims corresponding to petitioner's first, third, fourth, and fifth grounds for *habeas corpus* relief, and the second option with respect to that corresponding to ground two. See (Dkt. #51, Exhibit 15). As such, the court of appeals acted appropriately under Washington law by immediately dismissing all of the former claims, and remanding the petition for an evidentiary hearing on the latter claim.

The undersigned also disagrees with petitioner that the evidentiary hearing the state trial court held on remand was a "limited" hearing. First, there is no indication the trial court limited petitioner or his counsel in terms of the type or amount of evidence they could submit at the hearing. Second, while the Washington State Court of Appeals did remand the petition specifically on the issue of petitioner's ineffective assistance of counsel claim in regard to defense counsel's failure to raise the issue of competency and request a competency hearing, a wide range of evidence was presented to and considered by the trial court concerning the issue of competency at the time of trial. Indeed, the trial court found there was a reasonable probability that petitioner would have been found to be competent. See (Dkt. #51, Exhibit 20, p. 6). Such evidence thus also bears substantially on the sufficiency of the factual predicates for petitioner's other claims for relief as well.

REPORT AND RECOMMENDATION - 16

1    that she later sought to pursue in the federal court proceedings." Id.

2        Petitioner, however, reads too much into that last sentence.  In Pike, the petitioner at the

3    state court evidentiary hearing "elected to submit affidavits in lieu of much of the live testimony

4    that she [later] presented at the federal evidentiary hearing." Id.  It is in this sense, therefore, that

5    the Ninth Circuit meant that the "exact manner" in which the petitioner elected to make her point

6    was less important than the fact that the point was made.  That is, whether or not the petitioner

7    presented evidence in the state court proceedings in the form of affidavits or live testimony was

8    not as important as the fact that she presented it.

9        In this case, however, while petitioner did present some evidence in support of his claims

10   in the state court proceedings, the vast majority of that submitted with his motion for evidentiary

11   hearing and expansion of the record was not presented.  In addition, because petitioner has made

12   no showing that he was unaware, or should not have been aware, of this additional evidence "at

13   the time of his state court proceedings," he cannot be said to have presented it "during those

14   proceedings." Cooper-Smith, 397 F.3d at 1241-42 (petitioner was aware of factual predicates for

15   his claim during his state court proceedings; he thus was unable to make showing § 2254(e)(2)

16   required, and district court properly declined to expand record).  "As a result, [p]etitioner failed

17   to develop the factual basis for his claim[s] diligently." [5] Id. at 1242.

---

[5] The undersigned further notes that, as discussed in greater detail below, because the additional medical and other records petitioner has submitted, like that of the evidence already contained in the state court record, essentially goes to the issue of his mental health as opposed to his legal competency, "[t]here is no indication . . . that an evidentiary hearing would in any way shed new light on the" grounds for federal *habeas corpus* relief contained in his petition. Totten, 137 F.3d at 1177.  In addition, while it is true that unlike when he testified in the state trial court evidentiary hearing, Dr. Kolden stated in his declaration that he likely would have found petitioner to be not competent to stand trial, given that the other evidence before the Court from Dr. Kolden – including additional treatment records from him submitted with petitioner's motion – give no indication he believed petitioner to be legally incompetent at any time during the state court proceedings, the undersigned finds that declaration would not rise to the level of "clear and convincing" evidence necessary to overturn the state trial court's finding at the evidentiary hearing on the issue of petitioner's competency. See 28 U.S.C. § 2254(e)(1) (determination of factual issue made by state court presumed to be correct, and petitioner has burden of rebutting that presumption by clear and convincing evidence); Moran v. Godinez, 57 F.3d 690, 696 (9th Cir. 1995) (*overruled on other grounds* by Lockyer v. Andrade 538 U.S. 63, 75-76

REPORT AND RECOMMENDATION - 17

Petitioner claims he should not be faulted for failing to develop the record, because the state impeded the presentation of the facts to the state courts. Id.  Petitioner points out that in his declaration submitted in response to petitioner's personal restraint petition, Deputy Prosecuting Attorney Brian Moran stated that during pretrial proceedings, petitioner "appeared to me to be lucid, coherent, and in possession of his faculties," and did not "display any sign that he was not competent to stand trial." (Dkt. #51, Exhibit 13 (Brief of Respondent, Exhibit G, pp. 2-3)).  As evidence that this statement was not an accurate description of how Mr. Moran actually felt at the time, petitioner points to a copy of Mr. Moran's trial notes in which he described petitioner at arraignment as "doing less than good" with "heavy breathing," and then stating one month later that petitioner "again appears to be confused." (Dkt. #70-3, p. SR 119).

But these isolated comments – even where, as here, they are taken out of context of the pretrial proceedings as a whole, which lasted for nearly a year, and with respect to which there are no other indications in the record (which itself includes hundreds of pages of transcripts of

---

2003)) ("State court competency determinations are entitled to a presumption of correctness."); King v. Brown, 8 F.3d 1403, 1408 (9th ir. 1993) ("'A finding on the issue of competence is a finding of fact,' and thus is presumed correct,") (quoting Brewer v. Lewis, 989 F.2d 1021, 1030 (9th Cir. 1993).

Petitioner argues that the additional Kitsap County Jail records – which, as discussed elsewhere herein the undersigned declines to make part of the record in light of petitioner's failure to diligently attempt to obtain them – show the mental health professionals who saw and treated him at that facility gave strong indications that his mental competency was in doubt.  Assuming arguendo that petitioner had been diligent in obtaining those records, they do not rise to the level of clear and convincing evidence necessary in order for this Court to overturn the state courts' factual determinations on the issue of petitioner's competency at the time of his trial.  It is true that one such medical provider believed that petitioner might "fulfill all the criteria to be considered criminally insane" (although, as discussed in greater detail below, an opinion regarding a defendant's ability to appreciate the criminality of his or her alleged misconduct is not relevant to the issue of whether or not he or she was mentally competent to stand trial), that some of those medical providers recommended petitioner be sent to Western State Hospital for further mental evaluation, and that some of the jail staff noted unusual behaviors indicative of possible mental health issues. See (Dkt. #72-2, pp. SRFUS 60-61, 63, 124).  The most extensive and insightful evaluations of petitioner, however, came from Gary Lenza, M.D., who it is clear felt there was a very real probability, given petitioner's presentation and the lack of objective clinical findings, that petitioner was malingering.  Dr. Lenza thus wanted petitioner to undergo further psychiatric evaluation, which could not properly be done at the Kitsap County Jail, to "better assess whether or not there is evidence for" a mental illness diagnosis. See (Dkt. #72-2, pp. SRFUS 59, 123-26).  As such, the undersigned disagrees that there is a strong likelihood that the result of the state court evidentiary hearing, or the determination of the state courts on this issue, would have been any different.

REPORT AND RECOMMENDATION - 18

those proceedings) that Mr. Moran noticed anything unusual in regard to petitioner's behavior either inside or outside of the courtroom – hardly contradict or are inconsistent with the above statements made by Mr. Moran in his declaration.  None of the above terms used by Mr. Moran in his trial notes, equate with any certainty with an inability on the part of petitioner to assist in his own defense or to understand the proceedings.

First, heavy breathing is not at all necessarily a sign or symptom of mental incompetency. Indeed, it merely may be an indication of increased nervousness, which would be understandable for someone such as petitioner at that early stage of the criminal proceedings, particularly given that the record revealed petitioner tended to become anxious in high stress situations.  Second, "doing less than good" could be interpreted to indicate any number of things (including physical health issues) and again hardly constitutes evidence of mental deficiency.  As for the comment Mr. Moran made later in regard to petitioner appearing confused, once more it is not at all clear what the confusion concerned.  There is nothing in Mr. Moran's notes to indicate the confusion concerned petitioner's ability to perceive reality or what was happening.  Indeed, the full written comment reads as follows: "[Defendant] again appears confused – 'don't have nothing on me to begin with'" – [Plaintiff] asks for nature of defense."  Id.  That quoted statement from petitioner is alone a good indication that he was cognizant of his situation.

Petitioner also claims the state impeded his ability to present all the facts concerning his mental competency at the post-conviction evidentiary hearing, alleging that the Washington State Department of Corrections ("DOC") failed to provide his Kitsap County Jail medical records, even though his attorney at the time had subpoenaed all medical records in the DOC's possession, and there is some evidence in the record the DOC may have had the jail records in its possession at the time the subpoena was issued.  See (Dkt. #72-2, pp. SRFUS 48-65, 118-19, 123-

REPORT AND RECOMMENDATION - 19

26, 131; Dkt. #77-#78).  While it is not exactly clear when the DOC received those records, it does appear they had them at some point.  See (Id. at p. 131; Dkt. #78, Exhibit A).  Regardless, even if it can be said that the state, through the DOC, failed to properly disclose those records to his attorney, petitioner provides no explanation as to why a request for them was never made directly to the Kitsap County Jail, which presumably had the original copies thereof.  As such, the undersigned finds petitioner did not diligently attempt to develop the factual record here, given that petitioner and his attorney knew, or certainly should have known, petitioner spent over a year at the Kitsap County Jail, but apparently made no attempt to obtain any records therefrom.

Accordingly, to be entitled to an evidentiary hearing and/or an expansion of the record, petitioner must meet the stringent requirements of 28 U.S.C. § 2254(e)(2).  Petitioner does not argue there is a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.  See 28 U.S.C. § 2254(e)(2)(A)(i).  Nor – for the same reasons discussed above in regard to his failure to develop the record – has petitioner established the existence of a factual predicate that could not have been previously discovered through the exercise of due diligence.  See 28 U.S.C. § 2254(e)(2)(A)(ii).  Lastly, for the reasons discussed below, the facts underlying petitioner's stated grounds for federal *habeas corpus* relief are insufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty.  For all of the above reasons, therefore, the undersigned finds that petitioner's motion for evidentiary hearing and for expansion of the record (Dtk. #69) should be DENIED.

## MOTION FOR LEAVE TO CONDUCT DISCOVERY

As noted above, petitioner also has filed a motion for leave to conduct discovery in this matter.  See (Dkt. #80).  Rule 6 of the Rules Governing Section 2254 Cases in the United States

REPORT AND RECOMMENDATION - 20

District Courts ("Rule 6") provides in relevant part that the district court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure [("Fed. R. Civ. P.")] and may limit the extent of discovery." Rule 6(a); see also Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005) (petitioner is entitled to discovery if, and to extent that, court in exercise of its discretion and for good cause shown grants leave to do so, but not otherwise).  Here, petitioner is requesting discovery (specifically in the form of permission to issue subpoenas *duce tecum* pursuant to Fed. R. Civ. P. 45 to the Kitsap County Prosecuting Attorney's Office and to the Bremerton Police Department) in the apparent hope that he will find additional evidence to support his first and seventh grounds for federal *habeas corpus* relief.

Petitioner, however, makes no showing at all that the evidence he believes may be in the possession of the above two entities actually exists, or that if it does exist, what it is likely to show.  For example, petitioner simply states in regard to ground one that he believes "there may be additional evidence regarding [his] mental health, and his appearance and conduct both pre-trial and during trial and sentencing." (Dkt. #80, pp. 4-5).  In regard to ground seven, he simply states he is seeking if there is any evidence those entities may possess, which the state failed to disclose during the state court proceedings.  But petitioner has not demonstrated that the granting of the subpoenas he requests will result in anything other than a mere fishing expedition.  Indeed, petitioner himself acknowledges the evidence currently before the Court with respect to ground one "is sufficient to establish he is entitled to relief." (Id. at p. 4).  Nor, as discussed in further detail above, has petitioner made any showing or presented the Court with any evidence or other reliable indication that the prosecution actually withheld information from him.

Finally, as with his motion for an evidentiary hearing and to expand the record, petitioner has not given any explanation as to why he could not have sought such potential evidence earlier

during the state court proceedings.  In sum, petitioner has failed to show good cause for seeking

and obtaining discovery in this matter, nor based on a review of petitioner's motion, supporting

documents and the remaining record, does the undersigned find such exists here.  Accordingly,

that motion for leave to conduct discovery (Dkt. #80) should be DENIED as well.

DISCUSSION

I.    <u>Exhaustion of State Court Remedies</u>

The exhaustion of state court remedies is a prerequisite to the granting of a petition for

writ of *habeas corpus*. 28 U.S.C. § 2254(b)(1).  If exhaustion is to be waived, it must be waived

explicitly by respondent. 28 U.S.C. § 2254(b)(3).  A waiver of exhaustion thus may not be

implied or inferred.  A petition can satisfy the exhaustion requirement by providing the highest

state court with a full and fair opportunity to consider all claims before presenting them to the

federal court. <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083,

1086 (9th Cir. 1985).  Full and fair presentation of claims to the state court requires "full factual

development" of the claims in that forum. <u>Kenney v. Tamayo-Reyes</u>, 504 U.S. 1, 8 (1992).

It is not enough that all of the facts necessary to support the federal claim were before the

state courts, or that a somewhat similar state law claim was made.  <u>Duncan v. Henry</u>, 513 U.S.

364, 366 (1995) (citing <u>Picard v. Connor</u>, 404 U.S. 270 (1971) and <u>Anderson v. Harless</u>, 459

U.S. 4 (1982)).  A federal claim is "fairly and fully" presented to the state courts if the claim is

presented "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the

proper factual and legal basis for the claim." <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 668 (9th

Cir. 2005) (internal citations omitted).  The petitioner "must alert the state courts to the fact that

he is asserting a federal claim in order to fairly and fully present the legal basis of the claim." <u>Id.</u>

The claim must be fairly presented in "each appropriate state court," that is, at each level

REPORT AND RECOMMENDATION - 22

of state review, so as to alert the state "to the federal nature of the claim," and to give it the "opportunity to pass upon and correct" alleged violations of the petitioner's federal rights. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations and internal quotation marks omitted); see also Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992).  The federal basis of the claim, furthermore, must be made "explicit" in the state appeal or petition, "either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law." Insyxiengmay, 403 F.3d at 668; Baldwin, 541 U.S. at 33.

A.   Petitioner's Ground Seven and the Claim that His Trial Counsel Was Ineffective for Failing to Adequately Investigate His Competency Are Unexhausted

Respondent argues petitioner has failed to exhaust his seventh ground for federal *habeas corpus* relief – that he was denied due process under the Fourteenth Amendment when the state knowingly withheld material exculpatory evidence – pointing out that petitioner admitted as such in his amended petition. See (Dkt. #34, p. 15 ("Except for ground seven, all of the grounds listed above have been presented in state court.").  Nor does the record show that this ground has been presented to the state courts at any level of review.  The undersigned thus agrees with respondent that this ground clearly is unexhausted.

Respondent also argues petitioner has not exhausted his second ground for federal *habeas corpus* relief, in which petitioner claims he was denied his right to effective assistance of counsel when his trial counsel failed to adequately investigate whether he was competent to stand trial, failed to raise his competency with the trial court, and failed to request a competency evaluation. Specifically, respondent argues petitioner did not present this ground to the Washington State Supreme Court, the state's highest court, asserting that while petitioner did include in his petition for review a claim that his trial counsel was ineffective for not seeking a mental health evaluation due to his mental health problems, petitioner did not expressly claim his trial counsel was

REPORT AND RECOMMENDATION - 23

1   ineffective for failing to request a mental <u>competency</u> evaluation, and therefore these claims are

2   factually different.

3          While it may be true that a mental health evaluation is distinct from a mental competency

4   evaluation, the undersigned finds respondent's argument here to be without merit, as a reading of

5   the motion for discretionary review as a whole clearly reveals petitioner did claim therein that his

6   trial counsel was ineffective for failing to raise the issue of competency before the trial court and

7   failing to request a mental competency evaluation.  For example, petitioner's legal argument in

8   his petition for review focused on statutory and case law dealing with a defendant's competency

9   to stand trial and trial counsel's duty toward the defendant in regard thereto, including the duty to

10  notify the trial court that the defendant's "competency may be at issue." <u>See</u> (Dkt. #51, Exhibit

11  26, pp. 7-9).  Petitioner also expressly stated the case law he cited "establish defense counsel's

12  duty to seek an evaluation of a defendant's mental health when good cause arises to suspect the

13  defendant may not be competent to stand trial." (<u>Id.</u> at p. 10).  In addition, petitioner specifically

14  discussed the issue of his own competency. <u>See</u> (<u>Id.</u> at pp. 12-13).[6]

15

16

17         Petitioner thus clearly put the Washington State Supreme Court on notice that he was

18  claiming his trial counsel was ineffective for not notifying the trial court that there may be issues

19  with respect to his competency and for not requesting an evaluation thereof.  On the other hand,

20  the undersigned agrees with respondent that petitioner did not adequately inform the state's

21  highest court that he was claiming his trial counsel was ineffective for failing to investigate the

22  issue of whether he was competent to stand trial.  It is true that petitioner cited case law in his

23

24

25

26

---

[6] For example, petitioner's petition for review contained the following statements: "Mr. [Martin] felt that he could not assist Mr. [Michael] Henegen [(petitioner's defense counsel)] with the trial."; "Defense counsel is the one in the best position to alert the court when reasons exist to doubt the competency of a defendant.  Mr. Henegen's refusal to seek a mental health evaluation of [petitioner] was ineffective assistance of counsel."; "If Mr. Henegen had made arrangements for the requested evaluation, this case would have likely had a different outcome.  Mr. [Martin] would have been sent to Western State Hospital for a competency evaluation . . . , and if Western State Hospital found that [petitioner] could not be restored to competency, a trial would not have occurred." (<u>Id.</u>).

REPORT AND RECOMMENDATION - 24

petition for review discussing defense counsel's duty to make reasonable investigations into a defendant's mental health, along with the other responsibilities defense counsel had regarding a defendant's competency discussed above. <u>See</u> (<u>Id.</u> at pp. 8-9).  However, nowhere in his petition for review did petitioner argue or assert his own trial counsel had been ineffective for failing to conduct such an investigation.  Accordingly, as to this claim of failure to investigate contained in petitioner's ground two, the undersigned finds it to be unexhausted.  Indeed, petitioner expressly stated that "defense counsel had sufficient information regarding [his] mental health difficulties to seek an evaluation." (<u>Id.</u> at p. 10).

      B.  <u>Petitioner's Ground Seven and the Claim that His Trial Counsel Was Ineffective for Failing to Adequately Investigate His Competency Are Procedurally Barred</u>

When a petitioner has defaulted on his claims in state court, principles of federalism, comity, and the orderly administration of criminal justice require that federal courts forego the exercise of their *habeas corpus* power. <u>Francis v. Henderson</u>, 425 U.S. 536, 538-39 (1976).  Rules that promote prompt resolution of all constitutional claims at the appropriate state court proceeding must be respected by a federal *habeas* court. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991).  Thus, federal courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." <u>Rhines v. Weber</u>, 544 U.S. 269, 273 (2005).  Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." <u>Jefferson v. Budge</u>, 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 518-22 (1982)).

As just discussed, not all of petitioner's grounds for federal *habeas corpus* relief have been fully exhausted.  Thus, petitioner has presented a mixed petition containing both exhausted and unexhausted federal claims, which, also as just discussed, in itself requires dismissal of the petition.  Before doing so, generally the Court is required to provide petitioner with "the choice

REPORT AND RECOMMENDATION - 25

of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." Id.; see also Rhines, 544 U.S. at 278; Tillema v. Long, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims).

This is not so, however, where the petitioner would be procedurally barred from returning to state court to address the unexhausted claims. See Eisermann v. Penarosa, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim."). A district court may not consider the merits of a *habeas corpus* petition if the petitioner failed to exhaust state court remedies, and the state's highest court now would find the federal claims contained therein procedurally barred. Coleman, 501 U.S. at 735 n.1; see also Boyd v. Thompson, 147 F.3d 1124, 1126 (9th Cir. 1998) (procedural default doctrine bars federal *habeas corpus* review when state court has declined to address federal claims because petitioner failed to meet state procedural requirement).

To give litigants "a fair opportunity to comply with known procedural rules, the controlling state procedural bar is the one in place at the time the claim should have been raised." Calderon v. U.S. District Court for the Eastern District of California, 103 F.3d 72, 75 (9th Cir. 1996). Thus, "[o]nly if the bar is 'firmly established and regularly followed' at that time will it serve as an adequate ground to foreclose federal review." Id. Since 1989, Washington has had a one-year period of limitation within which a conviction or sentence may be collaterally attacked:

> No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

REPORT AND RECOMMENDATION - 26

RCW 10.73.090(1).  Clearly in this case, more than one year has passed since judgment became final in regard to petitioner's conviction and sentence.  Although Washington state law provides six statutory exceptions to the above time limit, none of those exceptions apply in this case. See RCW 10.73.100.[7]

Also in 1989, the Washington State Legislature enacted the following prohibition against the filing of successive collateral attacks:

> If a person has previously filed a petition for personal restraint, the court of appeals will not consider the petition unless the person certifies that he or she has not filed a previous petition on similar grounds, and shows good cause why the petitioner did not raise the new grounds in the previous petition. . . . If upon review, the court of appeals finds that the petitioner has previously raised the same grounds for review, or that the petitioner has failed to show good cause why the ground was not raised earlier, the court of appeals shall dismiss the petition on its own motion without requiring the state to respond to the petition.

RCW 10.73.140.  Under Washington law, a "collateral attack" is "any form of postconviction relief other than a direct appeal." In re Becker, 143 Wn.2d 491, 496 (2001) ("collateral attack" includes personal restraint petitions and motions for new trial).  Collateral attacks "cannot simply be a reiteration of issues finally resolved at trial and upon appellate review." Id.  Rather, they "must raise new points of fact and law that were not or could not have been raised in the principal action." Id.  Washington courts thus may not consider a personal restraint petition or other equivalent motion "if the movant has previously brought a collateral attack on the same or substantially similar grounds." Id.  Thus, at least with respect to petitioner's second ground for federal *habeas corpus* relief, the claim contained therein is procedurally barred under this state

---

[7] RCW 10.73.100(a) does provided that the one-year time limit will not apply when there is "[n]ewly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion [for collateral attack on a judgment and sentence in a criminal case]."  But as pointed out by respondent, no showing has been made as to what the allegedly "withheld material exculpatory evidence" is that petitioner refers to in his seventh ground for federal *habeas corpus* relief, nor has petitioner shown he acted with reasonable diligence in discovering any such evidence.

REPORT AND RECOMMENDATION - 27

statutory provision as well.

Only if petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," will he be entitled to federal *habeas corpus* review. Boyd v. Thompson, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing Coleman, 501 U.S. at 750). To satisfy the "cause" prong, petitioner must show that "some objective factor external to the defense" prevented him from complying with the state's procedural rule. McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Objective factors constituting "cause" include "interference by officials" making compliance with the procedural rule impracticable, as well as "a showing that the factual or legal basis" for the claims "was not reasonably available." Id. at 493-94 (internal quotes omitted).

Constitutionally ineffective assistance of counsel also constitutes cause, but any attorney error short of that will not excuse procedural default. Id. at 494. The mere fact that a petitioner is *pro se* or lacks knowledge of the law, furthermore, is insufficient to satisfy the cause prong. That is, "[w]hen a pro se petitioner is able to apply for post-conviction relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court." Hughes v. Idaho State Board Of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (claims of illiteracy and lack of help in appealing post-conviction petition, though unfortunate, were not sufficient for petitioner to meet cause standard); Boyd, 147 F.3d at 1126-27.

Once petitioner establishes cause, he also must show "'actual prejudice' resulting from the errors of which he complains." Allen v. Ornoski, 435 F.3d 946, 956 (9th Cir. 2006) (quoting McCleskey, 499 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 168 (1982))). Such prejudice exists if the alleged errors worked to petitioner's "actual and substantial disadvantage,

REPORT AND RECOMMENDATION - 28

infecting his entire trial with error of constitutional dimensions." <u>Frady</u>, 456 U.S. at 170

(emphasis in original).  In the alternative, a *habeas corpus* petition may be granted without a

showing of cause in those "extraordinary instances when a constitutional violation probably has

caused the conviction of one innocent of the crime." <u>McCleskey</u>, 499 U.S. at 494; <u>Murray</u>, 477

U.S. at 495-96 (in extraordinary case, where constitutional violation has probably resulted in

conviction of one who is actually innocent, federal *habeas* court may grant petition even in

absence of showing of cause).

 Here, petitioner makes no showing that some objective factor external to his defense

prevented him from complying with Washington's procedural bar rule.  Because petitioner

"cannot establish any reason, external to him, to excuse his procedural default," this Court need

not address the issue of actual prejudice. <u>Boyd</u>, 147 F.3d at 1127; <u>Thomas v. Lewis</u>, 945 F.2d

1119, 1123 n.10 (9th Cir. 1991) (finding of lack of cause eliminates court's need to discuss

whether petitioner was prejudiced).  Furthermore, because petitioner is not alleging that he is

actually innocent in his petition for federal *habeas corpus* relief – and because, as discussed

below, the record fails to "establish the requisite probability" that he indeed is actually innocent

– this is not the kind of extraordinary instance where the petition should be granted despite the

absence of a showing of cause. <u>Schlup v. Delo</u>, 115 S. Ct. 851, 867, 870 (1995); <u>McCleskey</u>, 499

U.S. at 494; <u>Murray</u>, 477 U.S. at 495-96.

II. <u>Standard of Review</u>

 A federal petition for writ of *habeas corpus* filed on behalf of a person in custody

pursuant to a judgment of a state court:

> [S]hall not be granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

REPORT AND RECOMMENDATION - 29

application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[8]  Thus, 28 U.S.C. § 2254(d) "defines two categories of cases" where such

relief may be obtained. Williams v. Taylor, 529 U.S. 362, 404 (2000).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's

"clearly established precedent if the state court applies a rule that contradicts the governing law

set forth" in the Supreme Court's cases. Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting

Williams, 529 U.S. at 405-06).  A state court decision also is contrary to the Supreme Court's

clearly established precedent "if the state court confronts a set of facts that are materially

indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result

different from" that precedent. Id.

A state court decision can involve an "unreasonable application" of the Supreme Court's

clearly established precedent in the following two ways: (1) the state court "identifies the correct

governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts"

of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the

Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses

to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407.

However, "[t]he 'unreasonable application' clause requires the state court decision to be more

than incorrect or erroneous." Lockyer, 538 U.S. at 75.  That is, "[t]he state court's application of

---

[8] The phrase "clearly established Federal law, as determined by the Supreme Court" used in § 2254(d)(1), "'refers to the holdings, as opposed to the dicta of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" Earp, 431 F.3d at 1182 (quoting Lambert v. Blodgett, 393 F.3d 943, 974 (2004) (quoting Lockyer, 538 U.S. at 71-72)).  Circuit court precedent, therefore, is relevant to evaluating the propriety of state court decisions, "only to the extent that it clarifies what constitutes clearly established law." Id. (citing Duchaime v. Ducharme, 200 F.3d 597, 602-03 (9th Cir. 2000) (Ninth Circuit precedent derived from extension of Supreme Court decision is not clearly established federal law as determined by Supreme Court).

REPORT AND RECOMMENDATION - 30

clearly established law must be objectively unreasonable." <u>Id.</u>; <u>Schriro</u>, 550 U.S. at 473 ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); <u>see also</u> <u>Holland v. Jackson</u>, 542 U.S. 649, 653 (2004) ("§ 2254(d) requires that 'state-court decisions be given the benefit of the doubt. [R]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law.") (internal and external citations omitted).

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Juan H. V. Allen</u>, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). However, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Schriro</u>, 550 U.S. at 473-74. To that end, a district court "may not simply disagree with the state court's factual determinations," but rather it must "conclude" that those determinations did not have even "fair support" in the state court record. <u>Thatsaphone v. Weber</u>, 137 F.3d 1041, 1046 (8th Cir. 1998). "[W]hether a state court's decision was unreasonable, furthermore, "must be assessed in light of the record the court had before it." <u>Holland</u>, 542 U.S. at 653; <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 348 (2003).

III.     Scope of Review and Harmless Error

The district court may not "reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Thus, the Court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Id.</u> at 68; <u>see also</u> <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over

REPORT AND RECOMMENDATION - 31

1  state judicial proceedings and may intervene only to correct wrongs of constitutional

2  dimension.").  In addition, for federal *habeas corpus* relief to be granted, the constitutional error

3  must have had a "substantial and injurious effect or influence in determining the jury's verdict."

4  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted).  In other words, petitioner is

5  "not entitled to *habeas* relief based on trial error," unless he "can establish that it resulted in

6  'actual prejudice.'" Id.

7

8  IV.    Petitioner Right to Due Process Was Not Violated When the Trial Court Did Not Order a
        Competency Evaluation

9

10         "It is well established that the Due Process Clause of the Fourteenth Amendment

11  prohibits the criminal prosecution of a defendant who is not competent to stand trial." Medina v.

12  California, 505 U.S. 437, 439 (1992); Pate v. Johnson, 383 U.S. 375, 378 (1966) (conviction of

13  accused person while legally incompetent violates due process); Godinez v. Moran, 509 U.S.

14  389, 396 (1993) (criminal defendant may not be tried unless he is competent); Hernandez v. Ylst,

15  930 F.2d 714, 716 (9th Cir. 1991) (conviction of accused person while legally incompetent to

16  stand trial is clear violation of  constitutional guarantee of due process).  As such, one "whose

17  mental condition is such that he lacks the capacity to understand the nature and object of the

18  proceedings against him, to consult with counsel, and to assist in preparing his defense may not

19  be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975); Godinez, 509 U.S. at 396;

20  Dusky v. United States, 362 U.S. 402, 402 (1960); Hernandez, 930 F.2d at 716 n.2.

21

22         To put it another way, "[a] defendant is competent if 'he has sufficient present ability to

23  consult with his lawyer with a reasonable degree of rational understanding,'" and "has a rational

24  as well as factual understanding of the proceedings against him.'" Blazak v. Ricketts, 1 F.3d 891,

25  894 (9th Cir. 1993) (quoting Dusky, 362 U.S. at 402); Godinez, 509 U.S. at 396.  "Competency

26  requires 'the mental acuity to see, hear and digest the evidence, and the ability to communicate

REPORT AND RECOMMENDATION - 32

with counsel in helping to prepare an effective defense." Hoffman v. Arave, 455 F.3d 926, 937

(9th Cir. 2006) (*overruled on other grounds*, Arave v. Hoffman, 552 U.S. 117 (2008)) (quoting

Odle v. Woodford, 238 F.3d 1084, 1089 (9th Cir. 2001) (citing Dusky, 362 U.S. at 402)).  In

addition, competency "requires an understanding of the *factual* basis of the proceedings," and

not the "mastery of technical legal knowledge." Id. at 938 (emphasis in original).  "The question

of competency to stand trial," furthermore, "is limited to the defendant's abilities at the time of

trial." United States v. Vamos, 797 F.2d 1146, 1150 (2nd Cir. 1986).

     "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried

or convicted while incompetent to stand trial deprives him of his due process right to a fair trial."

Drope, 420 U.S. at 172.  Thus, "[i]f a state court does not employ procedures designed to protect

against the trial of an incompetent, the resultant conviction must be reversed." Hernandez, 930

F.2d at 716.  "The trial court's constitutional obligation" in this regard, "is discharged by holding

a hearing to determine" the defendant's competency. Id.  A competency hearing "is not required,

however, absent a 'substantial' or 'bona fide' doubt of competency." Id. and n.3 ("Terms such as

'sufficient doubt,' 'bona fide doubt,' 'good faith doubt,' or 'genuine doubt' all describe the same

constitutional standard.").

     Accordingly, "[d]ue process requires a court to hold a competency hearing *sua sponte*

whenever evidence raises a sufficient doubt as to the competence of the accused." Johnson v.

Norton, 249 F.3d 20, 26 (1st Cir. 2001); see also Odle, 238 F.3d at 1087 ("[A] trial judge must

conduct a competency hearing whenever the evidence before him raises a bona fide doubt about

the defendant's competence to stand trial, even if defense counsel does not ask for one."); de

Kaplany v. Enomoto, 540 F.2d 975, 982-83 (9th Cir. 1976) ("[O]nce good faith doubt exists, or

should exist, its resolution requires a hearing."; "Genuine doubt . . . is the measuring rod.  The

REPORT AND RECOMMENDATION - 33

emergence of genuine doubt in the mind of a trial judge necessarily is the consequence of his total experience and his evaluation of the testimony and events of the trial.") (internal footnote omitted).

The test as to whether there is substantial doubt requires the trial court to "evaluate all the evidence" bearing on competency, and the reviewing court asks "'whether a reasonable judge[, situated as was the trial judge whose failure to conduct an evidentiary hearing is being reviewed,] should have experienced doubt with respect to competency to stand trial.'" Hernandez, 930 F.2d at 716 (citation omitted); see also de Kaplany, 540 F.2d at 983. "The trial judge must satisfy himself that," as just noted, "the defendant is able to understand the proceedings against him and assist counsel in preparing his defense." Odle, 238 F.3d at 1087. As the Ninth Circuit further has explained succinctly with respect to the evidentiary determination required:

> [A] due process evidentiary hearing is constitutionally compelled at any time that there is "substantial evidence" that the defendant may be mentally incompetent to stand trial. "Substantial evidence" is a term of art. "Evidence" encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is "substantial" if it raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence. The function of the trial court in applying [the] substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? It['s] sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time that such evidence appears, the trial court *sua sponte* must order an evidentiary hearing on the competency issue. . . .

Moore v. United States, 464 F.2d 663, 666 (9th Cir. 1972) (trial court's failure to inquire into defendant's competency to stand trial violates defendant's due process rights, unless reviewing court can say there was no substantial evidence before trial court casting doubt on defendant's competency at any time before he was sentenced).

REPORT AND RECOMMENDATION - 34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Where the state court should have, but failed to, hold a competency hearing, however, it "can nonetheless cure its failure" to do so "by conducting one retroactively." Odle, 238 F.3d at 1089.  Such "retrospective competency hearings may be held when the record contains sufficient information upon which to base a reasonable psychiatric judgment." Id. at 1090; see also Evans v. Raines, 800 F.2d 884, 887 (9th Cir. 1986) (upholding state court's finding of competency after state court conducted full hearing into that issue on remand).  Thus, although not favored in the Ninth Circuit, they may be held where it is possible to meaningfully evaluate the defendant's competency retrospectively. Maxwell v. Roe, 606 F.3d 561, 576 (9th Cir. 2010); see also Moran v. Godinez, 57 F.3d 690, 696 (9th Cir. 1995) (*superseded on other grounds* by Anti-Terrorism and Effective Death Penalty Act ("AEDPA")). [9]

"State court competency determinations," furthermore, "are entitled to a presumption of correctness." Moran, 57 F.3d at 696; Evans, 800 F.2d at 887 (same)[10]; see also King v. Brown, 8 F.3d 1403, 1408 (9th cir. 1993) ("'A finding on the issue of competence is a finding of fact,' and

---

[9] "In determining whether such a hearing is warranted," the reviewing court evaluates "such factors as the passage of time and the availability of contemporaneous medical reports." Maxwell, 606 F.3d at 576.  Other factors include the ability of the fact-finder "to observe the demeanor of the accused," whether "expert testimony would have had to have been based solely on the printed record," and the lapse of time between the time of trial and the post-conviction hearing. Id. (quoting de Kaplany, 540 F.2d at 986 n. 11 (discussing Pate, 383 U.S. at 387)).  As the Ninth Circuit in de Kaplany went on to explain, "even recognizing . . . the difficulties inherent in" post-conviction competency hearings, such hearings are not "necessarily unmanageable." 540 F.2d at 986 n. 11 (concluding in that case that post-competency hearing was possible, noting that while many years had passed between trial and hearing, several key expert witnesses were able to attend as was defendant's trial counsel, and many pages of expert testimony addressed to issue of competency of defendant at time of trial were available at competency hearing).  Further, "[w]hile the passage of time is significant in determining whether such a hearing can be held, . . . medical reports contemporaneous to the time of the initial hearing greatly increase the chance for an accurate retrospective evaluation of a defendant's competence." Moran, 57 F.3d at 696.

[10] As the Ninth Circuit noted in recognizing the presumption of correctness applied in this context, "[c]ompetency determinations necessarily involve assessments of credibility and demeanor." Id. at 887.  In addition, "competency may itself be examined in open court on a full record," and thus it is "the sort of determination that should be accorded deference." Id. at 887; see also Maggio v. Fulford, 462 U.S. 111, 118 (1983) ("'Face to face with living witnesses the [trial judge] holds a position of advantage from which [the reviewing court is] excluded.  In doubtful cases the exercise of [the judge's] power of observation often proves the most accurate method of ascertaining the truth . . . how can [the reviewing court] say the [judge] is wrong?  [The reviewing court] never saw the witnesses.") (quoting United States v. Oregon Medical Society, 343 U.S. 326, 339 (1952)).

REPORT AND RECOMMENDATION - 35

thus is presumed correct.") (quoting <u>Brewer v. Lewis</u>, 989 F.2d 1021, 1030 (9th Cir. 1993)).  As

such, "[t]o overcome the presumption of correctness" in regard to a finding of competency, the

burden rests on petitioner "'to establish by convincing evidence that the factual determination of

the State court was erroneous.'" <u>King</u>, 8 F.3d at 1408 (quoting 28 § 2254(d)); <u>see also</u> <u>Brewer</u>,

989 F.2d at 1027.  A finding of competency will be overturned "only if it is not fairly supported

by the record." <u>Moran</u>, 57 F.3d at 696 (citing <u>Demosthenes v. Baal</u>, 495 U.S. 731, 735 (1990));

<u>Brewer</u>, 989 F.2d at 1027.

A state court's factual determination will not be overturned, furthermore, if the reviewing

court merely concludes the petitioner "has the better of two reasonable . . . arguments," but only

if the court is "left with 'a firm conviction' that the" state court determination was in error.

<u>Torres v. Prunty</u>, 223 F.3d 1103, 1108 (9th Cir. 2000) (citation omitted); <u>see also</u> <u>King</u>, 8 F.3d at

1408 (conclusion of state court that petitioner was competent was supported by record and thus

entitled to deference, where both sides presented substantial evidence to support their positions at

state court hearing to determine competency); <u>Evans</u>, 800 F.2d at 887 (state court determination

that petitioner was competent made after it held full evidentiary hearing on remand was fairly

supported by record, even though there was conflicting evidence on that issue); <u>Brewer</u>, 989 F.3d

at 1027 (state court determination of petitioner's competency was proper, due to presumption of

correctness federal courts give to such determinations, and to petitioner's failure to come forward

with meaningful evidence to undermine that determination).

Petitioner claims he was denied his Fourteenth Amendment right to due process of law

when the state trial court failed to order a competency evaluation and hearing, despite evidence

of his mental illness and its symptoms.  The undersigned disagrees.  Of relevance to the decision

as to whether "'further inquiry'" into the petitioner's competency was required by the trial court,

REPORT AND RECOMMENDATION - 36

is evidence of the petitioner's "'irrational behavior, his demeanor at trial, and any prior medical opinion on competency to stand trial.'" Maxwell, 606 F.3d at 568 (quoting Drope, 420 U.S. at 180); see also Torres, 223 F.3d at 1108-09. Any "'one of these factors standing alone may, in some circumstances, be sufficient.'" Maxwell, 2010 WL 1997700 at *5 (quoting Drope, 420 U.S. at 180). In addition, "factors favoring a finding of competency do not justify ignoring uncontroverted evidence to the contrary." Johnson, 249 F.3d at 28 (citing Pate, 383 U.S. at 385-86). "In other words, a [state] court's factual findings cannot cure sufficient doubt concerning competency in the absence of an evidentiary hearing." Id.

No such doubt is present in this case. In denying petitioner's claim regarding the state trial court's failure to order an evidentiary hearing *sua sponte* concerning his competency, the Washington State Court of Appeals held in relevant part as follows:

> The trial court's determination of whether a competency examination should be ordered rests within its broad discretion and will not be overturned absent an abuse of that discretion. [In re Personal Restraint of Fleming, 142 Wn.2d [853, 863, 16 P.3d 610 (2001)]. The fact that a defendant is mentally ill does not necessarily demonstrate that he or she is incompetent. See, e.g., [State v. ]Lord, 117 Wn.2d [829, 901, 822 P.2d 177 (1991)] (trial court did not err in denying request for competency hearing, even though defendant exhibited signs of mental illness including delusions of conversations with the devil wherein the devil asked him to drink a cup of blood to prove his own innocence); State v. Smith, 74 An. App. 844, 850, 875 P.2d 1249 (1994) (without evidence linking psychological disorders to the capacity to plead guilty, the trial court did not err in denying motion to withdraw guilty plea).
>
> In making this claim, [Martin] points to testimony at the CrR 3.5 hearing. Detectives testified that the [Martin] told them he heard voices in his head and believed those people were real, even though his psychiatrist said they were not. Dr. Cagle had prescribed medications of some kind for [Martin] and determined he was mentally disabled, and [Martin] had qualified for public assistance by reason of his disability. [Martin] also notes that during trial he testified that he had been hearing voices ever since his natural father died when he was nine years old.
>
> But while these facts all provide indicia of mental illness, none of them, considered singly or together, give reason to conclude that [Martin] lacked the capacity to understand the nature of the proceedings against him or her and to assist in his defense. Lord, 117 Wn.2d at 900. If a defendant is

REPORT AND RECOMMENDATION - 37

receiving medication, he may be competent to stand trial if the medication enables him to understand the proceedings and to assist in his own defense. RCW 10.77.090(7).

Here [Martin] was medicated and nothing in the record suggests that the medication was not effective during the trial.  The lengthy record in this case contains the reports of many pretrial hearings, a lengthy trial and sentencing.  This record shows that [Martin] consulted with his counsel, reacted to the proceedings in a manner showing he understood them, testified cogently for approximately 100 pages of the record, exercised his right of allocution in an intelligent manner at sentencing, and made no outbursts or gave any other sign that he might not have been competent.  The trial court is not required to assume or speculate that medication is ineffective when all available indicia are to the contrary.  Rather, where the court neither observes evidence of irrational behavior in the courtroom nor receives psychiatric or psychological reports that question competency, the court does not abuse its discretion by not raising the issue itself. Fleming, 142 Wn.2d at 864. . . . [Martin] has not alleged that the trial court possessed any reason outside the record to doubt [Martin]'s competence.  Because nothing within the record supports such a doubt, [Martin] has not made a prima facie showing that the trial court abused its discretion.

(Dkt. #51, Exhibit 15, pp. 8-10).  In denying petitioner's motion for discretionary review, the

Washington State Supreme Court Commissioner, found in relevant part:

. . . Mr. [Martin] . . . argues that the [state court of appeals] applied the wrong standard of law in addressing whether the trial court should have ordered a competency hearing.  A trial court is required to hold a competency hearing whenever there is "doubt" about the defendant's competency. *In re Fleming*, 142 Wn.2d 853, 863, 16 P.3d 610 (2001); *State v. Lord*, 117 Wn.2d 829, 901, 822 P.2d 177 (1991).  Mr. [Martin] urges that the [state court of appeals] departed from this standard when [it] observed that none of the facts known to the trial court gave "*reason* to conclude that [Martin] lacked the capacity to understand the nature of the proceedings against him . . . and to assist in his defense. Order Partially Dismissing and Referring Personal Restraint Petition, No. 52793-2-I, at 9 (Jan. 21, 2004) (emphasis added).  But the [state court of appeals] was not required to recite talismanic language.  [It] cited the proper authorities and knew that the trial court's decision was reviewable only for abuse of discretion. *Fleming*, 142 Wn.2d at 863.  [It] ultimately determined that the trial court did not abuse its discretion because nothing in the record before the court supported "a *doubt*" about Mr. [Martin]'s competence. Order at 10 (emphasis added).  Mr. [Martin] demonstrates no error.

(Id., Exhibit 18, pp. 2-3).  After the two-day evidentiary hearing held on remand from the state

court of appeals, the state trial court made a number of Findings of Fact, which read in relevant

REPORT AND RECOMMENDATION - 38

part as follows:

. . .

23.     That Lloyd Booth [petitioner's step-father] admitted in his testimony [at the evidentiary hearing] that [petitioner] appeared to understand the charges and was able to participate in the defense.

. . .

25.     That the Court has considered [petitioner's] trial testimony . . . , which consisted of nearly 100 pages of transcript, but does not find it dispositive.  The Court does note, however, that [petitioner] clearly testified at length, and that his testimony does suggest that [petitioner] was aware of what was occurring.

26.     That Dr. Kolden conducted an intake evaluation of [petitioner] shortly after his arrival at the Monroe [correctional] facility in July 1998.

27.     That while Dr. Kolden, like Dr. Cagle, indicated that [petitioner] suffered from significant mental health issues, [Dr.] Kolden felt that  when he first encountered [petitioner] shortly after the trial, that [petitioner] understood the charges and the proceedings and would have been capable of assisting his counsel in his defense.

28.     That based on Dr. Kolden's opinions, and to a certain extent Dr. Cagle's comments, the Court finds that there is a reasonable probability that [petitioner] would have been found competent had he been sent to Western State [Hospital] and evaluated for competency in 1997 or 1998.

(Dkt. #64-2, Appendix, pp. 5-6).  In denying petitioner's appeal of the trial court's decision with

respect to the evidentiary hearing, the state court of appeals further found in relevant part that

even if he should have been sent for a mental competency evaluation, petitioner had not

established that he would have been found incompetent to stand trial. (Id., Exhibit 25, p. 8

(noting as well that neither petitioner's mother – who also testified at the hearing – nor his

stepfather had offered any testimony to show that petitioner lacked understanding of nature of

proceedings or that he was having difficulty working with his attorney).  The undersigned finds

the determinations of the state courts on these issues were neither "contrary to, or involved an

REPORT AND RECOMMENDATION - 39

unreasonable application of, clearly established federal law," nor "based on an unreasonable

determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

Citing <u>McMurtrey v. Ryan</u>, 539 F.3d 1112, 1125 (9th Cir. 2008), petitioner first argues

that contrary to what the state courts found, being on medication alone was sufficient to trigger

the trial court's duty to further inquire into his competency to stand trial.  It is true that the Ninth

Circuit stated in <u>McMurtry</u> that the "wide variety of antipsychotic and anti-anxiety medications"

the petitioner in that case was taking "over the course of his incarceration . . . alone should have

raised concerns for" the trial judge. 539 F.3d at 1125.  But what the Court of Appeals actually

held was that the totality of the evidence before the trial court – which included much more than

just the fact that the petitioner was prescribed medication – "raised a reasonable doubt as to [the

petitioner's] competence." <u>Id.</u> at 1126.[11]  Indeed, in support of this statement, the Ninth Circuit

---

[11] The Ninth Circuit's specific holding on this issue reads in relevant part:

> The state trial court had before it a significant body of evidence that [the petitioner] received a variety of antipsychotic and anti-anxiety medications over the course of his incarceration.  By the time of sentencing, [the trial judge] had been presented with evidence that [the petitioner] was prescribed Atarax, Ativan, Chloral Hydrate, Dalmane, Dilantin, Flavil, Librium, Thorazine, and Valium.  This evidence came in the form of pre-trial reports from doctors, trial testimony, documents in the pre-sentence report, and documents attached to the motion for a new trial.  The medications alone should have raised have raised concerns for [the trial judge] . . .

Other evidence presented at trial raised further doubts about [the petitioner's] competence.  The district court summarized some of this evidence as follows:

> The [state trial court] learned during trial that [the petitioner] was prescribed a wide variety of anti-anxiety medications, had been hospitalized for a suicide attempt, and suffered from a major depressive disorder that impaired his ability to control emotions.  This court also observed [the petitioner] become repeatedly physically ill during trial and, prior to sentencing, received documentation of [the petitioner's] increasingly volatile and aggressive behavior in jail.  The court was aware of counsel's concern that [the petitioner] was on the verge of a nervous breakdown and operating in a "chemical straight jacket," as well as medical records documenting Valium injections during trial to treat "extreme agitation."  Finally, the court observed [the petitioner] at sentencing as he knelt to address the "Creator of this court" and requested a "correct decision" without providing any coherent statement concerning himself, the crime or sentence.

We agree with the district court that *this evidence* raised a reasonable doubt as to [the petitioner's] competence.  The jail incident reports presented to [the trial judge] in the presentence report illustrating [the petitioner's] increasingly erratic and volatile behavior were striking, especially

REPORT AND RECOMMENDATION - 40

cited to its prior decision in <u>Moran</u>, wherein it had held that "the trial court's failure to inquire about the four psychiatric medications [the petitioner] was taking, *among other factors*, raised reasonable doubt about competence." <u>Id.</u> (citing 972 F.3d at 265) (emphasis added).

Petitioner also notes the state trial court was made aware of the fact that he suffered from a severe mental illness, that he had informed the police he was receiving supplemental security income ("SSI") benefits for mental disability, that he was seeing a psychiatrist and, as discussed above, was taking medication prescribed by that medical source, and that he heard voices in his head. The undersigned agrees with the state court of appeals, though, that while this certainly is evidence of mental illness, it did not raise a reasonable or sufficient doubt as to the competency of petitioner at the time of his trial. In other words it seems, as respondent notes, that petitioner has conflated the concept of mental illness with that of legal competency.

It is clear from the state court record that the trial court had before it evidence petitioner had been diagnosed with one or more psychiatric disorders, the symptoms of which included hearing voices and fugue-like periods of time loss in the past. There also was medical and other evidence available to the trial court of petitioner acting regressively at times, also in the past, such as behaving in a more child-like in his manner. Petitioner himself reported to his medical providers that he had experienced prior episodes of black-outs and epileptic-like episodes, and that he had sustained numerous injuries to his head in the distant past. Other evidence revealed a

---

alongside evidence that [the petitioner] was prescribed substantial doses of powerful and potentially incompatible medication.

<u>Id.</u> (emphasis added). It is these facts that clearly distinguish <u>McMurtry</u> from this case. As discussed in greater detail below, petitioner did not exhibit the kind of erratic behavior, nor is there any indication he was taking the complex combination of drugs, that the petitioner exhibited and took respectively in <u>McMurtry</u>. In addition, petitioner did not become repeatedly physically ill during trial or before sentencing, and the trial court was provided with no indication that trial counsel had any concern regarding his competency. Further, petitioner makes no showing that the medications he did take, had any significant adverse impact on his ability to assist defense counsel or to understand the nature of the proceedings against him at the time of his trial.

REPORT AND RECOMMENDATION - 41

1    pronounced stuttering problem, crying and extreme nervousness and agitation in his encounters

2    with the police and other similarly high stress situations, both in regard to the matter at hand and

3    previous incidents.

4            None of the medical evidence in the state court record, however, indicates or contains a

5    medical opinion that petitioner was mentally incompetent.  This includes the treatment records

6    from Dr. Cagle, the psychiatrist he was seeing prior to trial, as well as those from Dr. Kolden,

7    who began treating him soon after he arrived in prison.  As the Fifth Circuit has observed – and

8    as noted above by the state court of appeals – "[n]ot all people who have a mental problem are

9

10   rendered by it legally incompetent." Bouchillon v. Collins, 907 F.2d 589, 593 (5th Cir. 1990)

11   ("What is more to the point [in terms of a petitioner's competency determination] is [not whether

12   the petitioner suffered from his mental disorder, but] whether this disorder rendered him unable

13   to understand the proceedings against him or to assist in his own defense."); Hoffman, 455 F.3d

14   at 938 ("[T]hose with mental disorders 'frequently know the difference between right and wrong

15   and are competent to stand trial,' . . . As such, we have held that those with mental deficiencies

16   are not necessarily incompetent to stand trial.") (internal citation omitted).

17

18           The mere fact that a defendant is or was seeing a psychiatrist prior to or after – or even

19   during – trial, or as discussed above has been prescribed and is taking psychiatric medications,

20   furthermore, is, for the same reason, insufficient to establish a reasonable doubt as to his or her

21   competency to stand trial.  In addition, the fact that petitioner may have been found disabled for

22   SSI purposes, does not at all mean he was mentally incompetent, or there was a reasonable doubt

23   in regard thereto sufficient to put the state trial court on notice thereof.  As petitioner points out,

24   to be disabled and thus entitled to receive SSI benefits, an individual must be unable to engage in

25   any work by reason of a medically determinable physical or mental impairment. See 42 U.S.C. §

26

REPORT AND RECOMMENDATION - 42

1   423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  But the inability to engage

2   in work, again, is not at all the same thing – nor is it determined by the same legal standards – as

3   being mentally incompetent to stand trial.  That is, you may not be able to work, but still be able

4   to assist counsel and understand the nature of the legal proceedings against you.

5           Lastly, and most importantly, it cannot be said that anything in the record before the state

6   trial court should have given that court a reason to doubt petitioner's competency.  See United

7   States v. Lewis, 991 F.2d 524, 528 (9th Cir. 1993) ("[O]ne cannot fault a trial judge for failing to

8   determine a question that he [or she] has no reason to believe is in issue.") (citation omitted).  As

9   discussed above, none of the medical evidence available to the trial court gave any indication as

10  to an issue with petitioner's competency, though, also as discussed above, they certainly showed

11  the presence of mental illness.  Nor at the post-conviction evidentiary hearing held by the state

12  trial court on remand did Dr. Cagle or Dr. Kolden, both of whom testified at length on the issue

13  of petitioner's mental illness and treatment, indicate such.[12]

14

15

16

17  [12] Indeed, Dr. Cagle testified that petitioner could stay on topic, was able to be relevant, was capable of learning his
    legal case, and over time would be able to assimilate the facts of the case being recited to him and recite those facts.
18  See (Dkt. #51, Exhibit 33).  Dr. Kolden for his part, testified that petitioner: always appeared quite rational; said
    very interesting, insightful and almost profound things, often about spiritual or emotional matters; exhibited good
19  attention and comprehension; could have an organized conversation; and, at the time of his trial, likely was capable
    of learning about, responding to and understanding aspects of his case, including the function of his defense counsel
20  and the other actors in the trial proceedings.  Id.  In addition, none of their opinions – or those of any other medical
    opinion source in the record for that matter – created any genuine doubt specifically in regard to petitioner's mental
21  competency.  Thus, as in de Kaplany, "[T]he state court at no time was confronted with evidence of a long and
    extensive history of irrational behavior and mental illness . . . Nor was [that court] . . . confronted with a psychiatric
22  report which threw doubt on [petitioner's] competency to stand trial." 540 F.2d at 983 (noting psychiatric testimony
    favorable to petitioner was directed toward his criminal responsibility and not to his competency to stand trial); see
23  also Blazak, 1 F.3d at 897 (contrasting situation in de Kaplany with situation in case at hand, where petitioner did
    present psychiatric evaluations from previous prosecution that were directed to his competency to stand trial, and
24  therefore could not be disregarded as relevant evidence); Ylst, 930 F.2d at 718 ("Most significantly, while
    [psychologist who prepared psychological evaluation at defense counsel's behest, which was issued approximately
25  three months prior to trial] found [the defendant] to be delusional and depressed, and that his mental deterioration
    'would have prevented him from appreciating the criminality of his alleged misconduct,' he offered no opinion as to
26  [the defendant's] competence to stand trial at that time or (obviously) several months later, when the trial was
    held."); Steinsvik v. Vinzant, 640 F.2d 949, 953 (9th Cir. 1981) (noting presentence report indicated petitioner had
    significant emotional problems, but gave no indication he was not competent to stand trial).  Indeed, as discussed
    above and elsewhere herein, the facts concerning petitioner's competency in this case are very much like those faced

REPORT AND RECOMMENDATION - 43

The police detectives who interrogated petitioner at the time of his arrest also testified both during pretrial proceedings and at trial that although he reported hearing voices – including one voice who he reported had killed the victim – and at times was very emotional and cried, he appeared to know what was going on, his speech was coherent, and he was lucid and made sense. See (Dkt. #51, Exhibits 32 and 34).  As noted by the state court of appeals, furthermore, the trial transcript contains approximately 100 pages of petitioner's testimony, which gives no indication of irrational behavior on his part or lack of comprehension or understanding of the proceedings or subject-matter thereof. See (Id., Exhibit 34).  The same is true in regard to the other statements petitioner made on the record during pre- and post-trial proceedings. See (Id., Exhibits 2(a), 34).

Also of great significance is "the fact that . . . government counsel and [petitioner's] own attorney did not perceive a reasonable cause to believe [petitioner] was incompetent." Lewis, 991 F.3d at 528 (citation omitted).  Again, as noted by the state court of appeals, the record the trial court had before it showed petitioner "consulted with his counsel, reacted to the proceedings in a manner showing he understood them, testified cogently for approximately 100 pages of the record, exercised his right of allocution in an intelligent manner at sentencing, and made no

---

by the district court in Vamos, in which the Ninth Circuit held with respect to the medical and other evidence regarding the court's duty to inquire into the defendant's competency:

> The report of Dr. Goldstein submitted to the court as part of defendant's sentencing memorandum indicated that [the defendant] was suffering from depression but did not address issues bearing on ability to confer with counsel and to assist in the preparation of a defense. Dr. Goldstein offered no opinion as to [the defendant's] competence.  It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial. . . . Since Dr. Goldstein's report did not link [the defendant's] illness to her competency to stand trial, and the observations of the court and [the defendant's] counsel did not provide such a connection, the report did not give rise to reasonable cause to doubt [the defendant's] competency to do so.

> Because [the defendant's] conduct did not provide a reasonable basis for doubting her competence to stand trial and, to the contrary, indicated that she was an active participant in preparing her case, we reject the contentions that the district court abused its discretion in considering [the defendant] competent to stand trial or that the court was compelled to conduct a full inquiry in [the defendant's] competence.

797 F.2d at 1150-51 (internal citations omitted).

REPORT AND RECOMMENDATION - 44

outbursts or gave any other sign that he might not have been competent." (Dkt. #51, Exhibit 15, pp. 9-10). Petitioner argues that when there is substantial evidence before the trial court of the need to inquire further into a defendant's mental competency, "[it] is no answer that the record does not indicate florid psychotic behavior . . . while in court." (Dkt. #61, p. 53).

But as discussed above, substantial evidence of mental incompetency was not before the trial court in this case. In addition, the cases petitioner cites in support of his argument here do not help him. It is true that the Ninth Circuit stated in <u>Odle</u> that a defendant's "calm behavior in the courtroom is not necessarily inconsistent with mental incompetence," and that a petitioner's passivity and the fact that he or she did not disrupt court proceedings may mask incompetence to meaningfully participate therein. <u>See</u> 238 F.3d at 1088-89. But the facts of <u>Odle</u> make that case wholly distinguishable from the one at hand. In <u>Odle</u>, a "large body of clinical evidence tended to cast doubt on [the petitioner's] competence," including a suicide attempt prior to trial in which the petitioner was found "lying face down . . . apparently unconscious," after having attempting to kill himself "by setting fire to his [jail] cell." <u>Id.</u> at 1088.

The petitioner in <u>Odle</u> also "was missing a piece of his brain the size of a grapefruit," of which "the trial judge was aware." <u>Id.</u> In addition, the petitioner's attorney later explained that the petitioner's "calmness in the courtroom" was "a strategy for controlling his behavior during trial proceedings," and as the Ninth Circuit went on to note:

> . . . Because the lawyer was concerned "about the potential for [the petitioner] to explode irrationally in court," the lawyer "encouraged his to block out the proceedings whenever they began to agitate him." He coached [the petitioner] to "stare at a particular object or objects in the courtroom, such as a coffee cup or sign, so that he could simply focus on those to the exclusion of events in the courtroom that might disturb him." . . . While this evidence was not available to the state trial judge, it illustrates the danger of relying on calm behavior in the courtroom as a guide to mental competence.

<u>Id.</u> at 1089 (internal citation omitted). Here, however, there is no indication petitioner's calm,

REPORT AND RECOMMENDATION - 45

non-disruptive behavior both before and during trial, or at sentencing, was a strategy employed by defense counsel for controlling his potential for irrational or erratic behavior, as opposed to merely reflecting petitioner's actual mental state at the time. See Vamos, 797 F.2d at 1150 (question of competency to stand trial is limited to defendant's abilities at time of trial, and failure to conduct full competency hearing is not ground for reversal when defendant appears competent during trial; accordingly, deference is owed to state court's determinations based on observation of defendant during court proceedings).

In Bouchillon, the evidence in the record showed that at the time of his guilty plea, the petitioner experienced "episodes of 'numbing' and blackouts during which he [could not] be expected to exercise judgment or reason," which would not necessarily have been obvious to a layman. 907 F.2d at 592-53. But there is no reliable evidence in the record that petitioner here was experiencing fugue-like periods of time loss at the time of his trial, let alone that such episodes rendered him unable to exercise judgment or reason. Indeed, once more as noted by the state court of appeals, the record reveals that petitioner understood the proceedings, consulted with his counsel and testified cogently and extensively at trial.

A review of the case law in this area, furthermore, reveals that more generally is needed to establish a reasonable or sufficient doubt as to mental competency to stand trial than has been shown by petitioner here. For example, in those cases where error was found in the trial court's failure to inquire into the petitioner's competency to stand trial, some demonstration of erratic or irrational behavior (or history thereof) inside or outside of the courtroom or other strong indicia of mental incompetency was an important factor. See Boag v. Raines, 769 F.2d 1341, 1343 (9th Cir. 1984) ("In cases finding sufficient evidence of incompetency, the petitioners have been able to show either *extremely* erratic and irrational behavior during the course of the [proceedings], or

lengthy histories of *acute* psychosis and psychiatric treatment.")[13] (emphasis added) (internal

citations omitted); see also, e.g., Medina, 505 U.S. at 441 (petitioner engaged in several verbal

and physical outbursts, including overturning counsel table on one occasion); Drope, 420 U.S. at

180-81 (suicide attempt and absence for crucial portion of trial due to act suggesting substantial

degree of mental instability contemporaneous with trial)[14]; Pate, 383 U.S. at 385 (uncontradicted

evidence of pronounced irrational behavior); Maxwell, 2010 WL 1997700 at *5-*6 (petitioner's

uncontrolled and disruptive behavior in courtroom and signs of irrationality and paranoia when it

came to his own defense)[15]; Torres, 223 F.3d at 1109-10 (petitioner expressed paranoid delusion

---

[13] Although the record indicates the history of petitioner's mental illness extended back to his childhood, including one or more hospitalizations for psychiatric treatment, such treatment largely occurred well before the time of trial, and the record in general fails to establish that his mental health history was "acute" in nature as contemplated by the Ninth Circuit in Boag. See id. (citing Moore v. United States, 464 F.2d 663, 665 (9th Cir. 1972) (defendant had repeatedly been hospitalized for acute mental illness and hallucinations).

[14] The Supreme Court in Drope also noted that "as a result of [the] petitioner's absence the trial judge and defense counsel were no longer able to observe him in the context of the trial and to gauge from his demeanor whether he was able to cooperate with his attorney and to understand the nature and object of the proceedings against him." Id. at 181.

[15] As the Ninth Circuit went on to describe what occurred in that case:

> . . . [The petitioner] engaged in "peculiar behavior" and "continually disrupted the trial until he was removed from the courtroom and locked up." . . .
>
> [The petitioner's] lack of self control was apparent even before trial. During pretrial proceedings, [the petitioner] made noises and blurted out obscenities in the courtroom. Defense counsel advised the trial judge that [the petitioner] "has been, in my opinion, getting worse, or deteriorating . . . I know that he has been in the psychiatric unit . . . of the jail . . . I am not sure he knows what I am saying . . ." . . .
>
> The trial judge then asked Sergeant Larry Jenegan whether he had any concerns regarding the security of the courtroom with [the petitioner] present. Serge[a]nt Jenegan informed the judge that [the petitioner] had undergone numerous psychiatric evaluations . . . had been prescribed psychiatric medication which he refused to take, and had assaulted another inmate with a knife. Sergeant Jenegan concluded that [the petitioner] "either is unwilling or unable to conform to proper court behavior," and asked the trial court to order [the petitioner] to wear a Remote Electronically Activated Control Technology ("REACT") belt. The trial court agreed that [the petitioner] "obviously, has been displaying disruptive behavior and he is having a difficulty conforming himself," and ordered that the REACT belt be placed on [the petitioner] at the discretion of the Sheriff's Department.
>
> Following this colloquy, [the petitioner] had another physical and verbal outburst. The courtroom deputies, with the assistance of [the petitioner's] own counsel, had to physically restrain [the petitioner] and forcibly put him in his seat. At that point, the trial judge found

REPORT AND RECOMMENDATION - 47

that his attorney was part of greater conspiracy against him, insisted on wearing jailhouse blues

in court and being handcuffed after being ordered shackled as well, threatened to assault his

attorney, and continually disrupted trial until he was removed from courtroom and locked up);

Blazak, 1 F.3d at 894-98 (history of mental illness that included three separate prior findings of

mental incompetency); Chavez v. United States, 656 F.2d 512, 519 (9th Cir. 1981) (emotional

outburst in open court resulting in forcible removal therefrom, previous psychiatric finding of

insanity, firing of defense counsel in connection with guilty plea, and inference that petitioner

had not even attempted to plea bargain); Tillery v. Eyman, 492 F.2d 1056, 1057-58 (9th Cir.

1974) (petitioner yelled and screamed from jail cell during nights, laughed at jury, made gestures

at bailiff, disrobed in and later was removed screaming from courtroom, and before appearing in

court, refused to put on his shoes and socks and butted his head through glass window); Moore,

464 F.2d at 666 (evidence of repeated suicide attempts, hospitalizations for acute mental illness,

self-destructive and mutilating behavior, and hallucinatory episodes).

   In those cases where the trial court was found not to have erred, however, the facts more

resemble those in this case.  For example, in finding the trial court made no such error in Lewis,

the Ninth Circuit noted as follows:

---

that [the petitioner] "represents a threat to the staff and possibly to [defense counsel] as well" and ordered that [the petitioner] be removed from the courtroom. . . .

. . . [The petitioner's] trial commenced without him.  Over the course of the next few days of trial, [the petitioner's] counsel advised the court of [the petitioner's] increasingly irrational and paranoid behavior.  Specifically, defense counsel informed the court that [the petitioner] had requested that his attorney turn over evidence that would be helpful to the prosecution, asked that his counsel be fired, and continued to refuse to attend or even listen to the trial proceedings.

. . . [The petitioner's] behavior throughout his murder trial was unreasonable and self-defeating.  [The petitioner's] communication with his attorney was so strained that his counsel stated he was unable to develop a theory of the case or make an opening statement.

. . . Furthermore, during the trial, [the petitioner] attempted to kill himself. . . .

Id. (internal footnotes and citations omitted).

REPORT AND RECOMMENDATION - 48

> [The petitioner] does not suggest his behavior was irrational. . . . Nor has he presented any evidence of his demeanor which would have alerted the [trial court] to the possibility that he was not competent. . . . To the contrary, the transcript . . . shows him to be alert, unafraid to address the court, and able to use somewhat technical legal terms appropriately (*i.e.*, "[T]he charges will be dismissed?", "How do I get bail exonerated?", "Why didn't you give me a concurrent sentence?"). . . .

> . . . Moreover, [the petitioner] answered all other questions directed to him without any apparent hesitation or lack of comprehension.

991 F.2d at 528 (internal footnote and citation omitted); see also Hernandez, 930 F.2d at 717-18 (petitioner gave no indication of mental illness, and there was no indication petitioner could not rationally consult with his attorney or understand proceedings against him); Vamos, 797 F.2d at 1150-51 (trial court observed no unusual behavior by petitioner during course of 16-day trial that provided basis for doubting her competence; rather petitioner's conduct indicated she was active participant in preparing her case); Boag, 769 F.2d at 1343 (five prior suicide attempts, repeated head injuries, story of bizarre behavior, alcoholism, psychiatric diagnosis, and recommendation regarding need for intensive psychiatric treatment, taken as whole did not raise substantial doubt as to petitioner's competency, as petitioner failed to show they caused any mental impairment at time of trial); Steinsvik, 640 F.2d at 952 (transcript of proceedings clearly indicated petitioner was alert and responded clearly and rationally to questions posed by trial court regarding guilty plea[16] and facts underlying charge).

In addition, although it is true as petitioner asserts that the fact that defense counsel did not question his competency is not dispositive here, it "is unquestionably a factor which should

---

[16] The standard for determining competence to plead guilty is the same as that for determining competence to stand trial. See Godinez v. Moran, 509 U.S. 389, 398 (1993) ("[W]e reject the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the . . . standard [for competence to stand trial]."); see also United States v. Howard, 381 F.3d 873, 878 (9th Cir. 2004) (when analyzing competence to plead guilty, reviewing court looks to whether defendant has ability to make reasoned choice among alternatives presented; this standard is no higher than standard for competence to stand trial).

REPORT AND RECOMMENDATION - 49

be considered" by the reviewing court. <u>Drope</u>, 420 U.S. at 177 n. 13; <u>see also</u> <u>Lewis</u>, 991 F.2d at 528 (silence of defense counsel on subject of petitioner's competency during court hearings is some evidence that petitioner showed no signs of incompetence at that time). Thus, while it also is true that defense counsel "'is not a trained mental health professional,'" and accordingly "'his failure to raise petitioner's competence [with the trial court] does not establish'" petitioner in fact was competent, the Supreme Court expressly has noted that "defense counsel will often have the best-informed view of [the] defendant's ability to participate in his defense." <u>Medina</u>, 505 U.S. at 450; <u>Maxwell</u>, 606 F.3d at 574 (noting that although defense counsel made no formal request for competency hearing, on numerous occasions he did express concern that defendant was unable to aid in his own defense) (quoting <u>Odle</u>, 238 F.3d at 1089); <u>Hernandez</u>, 930 F.2d at 718 (fact that defense counsel considered defendant competent constituted significant evidence thereof) (citing <u>United States v. Clark</u>, 617 F.2d 180, 186 (9th Cir. 1980). This is because, as the Second Circuit has aptly noted, "incompetency involves an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings." <u>Vamos</u>, 797 F.2d at 1150. Accordingly, "failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence." <u>Id.</u> (noting trial counsel neither moved for competency hearing nor indicated to court at time of trial any grounds for doubting defendant's competence). For all of the above reasons, the undersigned finds petitioner's right to due process was not violated by the state trial court's failure to order a mental competency evaluation.

V.    <u>Petitioner's Right to Effective Assistance of Counsel Was Not Violated by Defense Counsel's Failure to Raise the Issue of Competency with the State Trial Court and to Request a Competency Evaluation</u>

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668,

686 (1984) (right to counsel is right to effective assistance of counsel).  When ineffective

assistance of counsel is claimed, the standard to be used is "whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as

having produced a just result." Strickland, 466 U.S. at 686.  Counsel's representation must have

been "so defective as to require reversal of a conviction." Id. at 687; see also Kimmelman v.

Morrison, 477 U.S. 365, 381 (1986) ("Only those petitioners who can prove under Strickland

that they have been denied a fair trial by the gross incompetence of their attorneys will be

granted the writ.").  To prevail on an ineffective assistance of counsel claim, the petitioner must

show that "counsel's performance was deficient" and that "the deficient performance prejudiced

the defense." Strickland, 466 U.A. at 687.  Thus, unless both of these showings are made, "it

cannot be said that the conviction . . . resulted from a breakdown in the adversary process that

renders the result unreliable." Id.

In addition, there is a "strong presumption" that the performance of defense counsel "falls

within the 'wide range of professional assistance.'" Kimmelman, 477 U.S. at 381.  With respect

to defense counsel's performance, the proper standard to be used by the reviewing court "is that

of reasonably effective assistance" under "prevailing professional norms." Strickland, 466 U.S.

at 687-88.  Therefore, to prevail the petitioner "must show that counsel's representation fell

below an objective standard of reasonableness." Id. at 688; United States v. Vincent, 758 F.2d

379, 381 (9th Cir. 1985) (defendant must show counsel's errors reflect failure to exercise skill,

judgment or diligence of reasonably competent attorney).

Counsel, furthermore, has "wide latitude in deciding how best to represent a client" and

in "making tactical decisions." Yarborough, 540 U.S. at 5; Strickland, 466 U.S. at 689.  The

competence of counsel "is presumed," and thus "[t]he reasonableness of counsel's performance

REPORT AND RECOMMENDATION - 51

is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the

circumstances." Kimmelman, 477 U.S. at 381, 384.  Not surprisingly, therefore, "the standard of

review is highly deferential." Id. at 381.  As the Supreme Court has explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy for a court, examining
> counsel's defense after it has proved unsuccessful, to conclude that a
> particular act or omission of counsel was unreasonable.  A fair assessment of
> attorney performance requires that every effort be made to eliminate the
> distorting effects of hindsight, to reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct from counsel's perspective at
> the time.  Because of the difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct falls within the
> wide range of reasonable professional assistance; that is, the defendant must
> overcome the presumption that, under the circumstances, the challenged
> action "might be considered sound trial strategy."

Strickland, 466 U.S. at 689 (citations omitted).

As noted above, to prevail on an ineffective assistance of counsel claim, the petitioner

also must "affirmatively prove prejudice." Id. at 693.  In other words, it is not enough to show

that "particular errors of counsel were unreasonable," and that they had "some conceivable effect

on the outcome" of the trial. Id.  Rather, it must be shown that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." Id. at 694.  A reasonable probability is that which is "sufficient to undermine

confidence in the outcome." Id.  When determining whether prejudice exists, the reviewing court

"'must consider the totality of the evidence before the judge or jury.'" Kimmelman, 477 U.S. at

381 (citing Strickland, 466 U.S. at 695).

The Washington State Court of Appeals provided the following analysis in denying the

ineffective assistance of counsel claim petitioner raised in his personal restraint petition:

> [Martin] contends that his trial attorney, Michael Henegen, had
> numerous reasons to doubt [Martin]'s competency but failed to fulfill his
> statutory and constitutional duty to advise the court that [Martin] needed a

REPORT AND RECOMMENDATION - 52

competency evaluation before proceeding to trial.  [Martin] contends that this failure amounted to the denial of effective assistance of counsel.

To sustain a claim of ineffective assistance of counsel, the defendant must show: (1) "counsel's" performance was deficient," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Counsel with reason to doubt a defendant's competency may provide ineffective assistance if counsel fails to raise the issue with the trial court. In re Personal Restraint of Fleming, 142 Wn.2d 853, 863, 16 P.3d 610 (2001).

No incompetent person may be tried, convicted, or sentenced for the commission of an offense as long as the incapacity continues. RCW 10.77.050; In re Personal Restrain of Fleming, 142 Wn.2d 853, 861, 16 P.3d 610 (2001).  A defendant is competent if he or she has the capacity to understand the nature of the proceedings against him or her and to assist in the defense. State v. Lord, 117 Wn.2d 829, 900, 822 P.2d 177 (1991).  RCW 10.77.060 requires a court to order a mental evaluation whenever there is reason to doubt the defendant's competency.  If there is reason to doubt the defendant's competency, the court must appoint qualified experts to determine whether the defendant is competent to stand trial. Fleming, 142 Wn.2d at 863.

To make this claim, in addition to the trial record, [Martin] relies upon his own affidavit and health records obtained from his former treating psychiatrist, Dr. William Cagle.  Dr. Cagle's records, which were obtained and reviewed by trial counsel, showed that [Martin] suffered a long and documented history of mental illness.  [Martin]'s problems included auditory hallucinations that led him to believe he spoke with different people that resided inside his head.  [Martin] was under Dr. Cagle's care for two years, including the nine months before the murder.  Dr. Cagle diagnosed [Martin] as suffering from multiple personality disorder, post-traumatic stress disorder, and possibly polysubstance abuse, psychotic disorder and brain seizure disorder.  [Martin] reported to Dr. Cagle that he suffered "lost time" or amnesia to the extent that his grip on reality had slipped.  Dr. Cagle had concluded that [Martin] was chronically mentally ill and severely disabled.  Dr. Cagle prescribed anti-psychotic medications.

[Martin] makes additional allegations in the affidavit he has filed in support of his petition.  [Martin] asserts that he suffered repeated seizures in Kitsap County Jail while he waited for trial, that the jail provided only medications that did not help, that he needed to see a doctor, but Dr. Cagle did not come to the jail to see him and Henegen did not help him get one.  [Martin] further alleges that he told Henegen his mind was not working correctly and that he was experiencing seizures and lost time.  He also told Henegen that he wanted to go to Western State hospital for a mental evaluation, and recalls that he was incoherent half the time and could not concentrate or provide Henegen information or assist him.  Nonetheless, according to [Martin], Henegen did not want him to go to the hospital where he might say things that could be used against him.

In its response, the State has provided an affidavit from Henegen in

REPORT AND RECOMMENDATION - 53

which he disputes most of what [Martin] claims.  According to Henegen, he was well aware of [Martin]'s mental health issues and did not refuse to allow [Martin] access to medical personnel.  When [Martin] expressed concerns about his medication, Henegen arranged through jail administration for [Martin] to see appropriate medical personnel and [Martin]'s medications were adjusted.  Henegen also maintains that through the nearly year-long period covering pre-trial proceedings through sentencing, he never had any concern that [Martin] was not competent to assist in his own defense. Henegen was able to communicate with [Martin] at all times and [Martin] appeared to be alert and to understand both what Henegen told him and what was going on in the proceedings around him.

Correctly acknowledging that this factual dispute can only be resolved in an evidentiary hearing, the State nonetheless suggests that this court can dismiss as frivolous sub-portions of [Martin]'s first claim for relief insofar as they are based only upon the trial record and Dr. Cagle's records. Response at 12.  The suggestion is not well taken.  Ineffective assistance as to a particular act or omission by counsel is a distinct ground for relief, and it is not made a different issue simply by supporting it with different factual allegations or different legal arguments. In re Jeffries, 114 Wn.2d 485, 488, 789 P.2d 731 (1990).  [Martin] has stated one claim that Henegen improperly failed to alert the court of the need for a competency evaluation.  Piecemeal resolution of that claim is not appropriate.

Moreover, reviewing a claim of ineffective assistance requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984).  The claim regarding the communications between Henegen and [Martin] can only be evaluated in the context of the other information Henegen had received that might relate to [Martin]'s competency, including the proceedings at trial and Dr. Cagle's records that Henegen reviewed.  Even if [Martin]'s first claimed ground for relief could be divided in the fashion the State suggests, it would not make sense to do so.

Under the circumstances, it is appropriate under RAP 16.11(b) to transfer the petition to Superior Court for resolution in [sic] of [Martin]'s claim that Henegen provided ineffective assistance by failing to alert the court that there was an issue with [Martin]'s competence to proceed to trial.

(Dkt. #51, Exhibit 15, pp. 4-8).

On remand the trial court, in addition to those discussed above, made the following

Findings of Fact after holding the two-day evidentiary hearing on this issue, which read in

relevant part:

REPORT AND RECOMMENDATION - 54

. . .

2.      That on February 14 and 15, 2005, the Court heard the testimony of:

Brian Moran, the former deputy prosecuting attorney who prosecuted [petitioner]
Michael Henegen, [petitioner's] trial counsel
Sandy Francis, the investigator retained to assist Henegen before trial
Ron Bright, Francis' former partner, who was retained to assist the trial counsel of [petitioner's] codefendant Keith Iaea
Lloyd Booth, [petitioner's] stepfather
Jeanne Booth, [petitioner's] mother
Dr. William Cagle, a psychiatrist who treated [petitioner] in 1995 and 1996
Dr. Rolf Kolden, a psychiatrist employed at the Special Offender Unit at Monroe Correctional Complex, who has treated [petitioner] since his commitment to the [Washington State] Department of Corrections in 1998
Lon Martin, the defendant

. . .

4.      That the Court accepts as credible the testimony of Michael Henegen.

. . .

6.      That Henegen first saw [petitioner] on June 17, 1997.

7.      That Henegen continued to see [petitioner] approximately once a week, or more if there were hearings scheduled, until trial began on April 13, 1998.

8.      That there were 24 or 25 pretrial hearings between arraignment and trial, and each hearing was attended by [petitioner] and Henegen.

9.      That based on [petitioner's] demeanor, appearance, and conduct before and during trial, no "red flags" were presented that should have alerted Henegen to the need for a competency evaluation.

10.     That Dr. Cagle, who treated [petitioner] during 1995 and 1996, documented various behaviors associated with [petitioner's] mental illness including "time loss" and the apparent appearance of "alters" reflective of multiple personality or disassociative identity disorder.  Dr. Cagle's notes were introduced as Exhibit 7.

REPORT AND RECOMMENDATION - 55

11.     That Henegen did not witness any behavior by [petitioner] comparable to that described by Dr. Cagle.

12.     That Henegen was aware of the notes contained in Exhibit 7 and that [petitioner] had a history of serious mental illness.

13.     That Henegen was cognizant of [petitioner's] mental health issues throughout the pretrial and trial proceedings, and would have requested a competency evaluation had [petitioner] not been able to assist him in his defense or if he did not appear to understand the charges or the proceedings.

14.     That [petitioner] always appeared to understand Henegen.

15.     That [petitioner] did not express confusion to Henegen, and never told Henegen that he was hearing voices or spoke to Henegen as an "alter."

16.     That [petitioner] did not have any "time losses" during his dealings with Henegen, and never indicated to Henegen that he did not recall their prior meetings or indicate that he did not know where he was or why he was there.

17.     That [petitioner] was able to focus on the issues at hand, and was helpful and coherent.

18.     That [petitioner] was able to assist Henegen with regard to the facts.  For example:

[Petitioner] could recount his relationship with the murder victim, Brian Johnson;
[Petitioner] related a prior, non-homicidal altercation between [petitioner] and Johnson;
[Petitioner] recalled the details of his interview by the police, which was useful for the CrR 3.5 hearing;
[Petitioner] shared information regarding other potential witnesses;
[Petitioner] was able to provide details regarding the evidence;
[Petitioner] discussed his treatment with Dr. Cagle and the contents of Exhibit 7.

19.     That when codefendant Keith Iaea entered an *Alford* plea to the lesser charge of second-degree murder, Hegenen explained what that meant to [petitioner], and explained to him that [petitioner] could enter such a plea without admitting guilt, but [petitioner] insisted that he wanted to go to trial.

20.     That [the petitioner] consistently denied that he was guilty.

REPORT AND RECOMMENDATION - 56

21.     That Henegen believed [petitioner's] claim that he was innocent, and that they had a defensible case, because the verifiable facts [petitioner] related appeared more credible to him than the uncorroborated statements of the State's witness Delores Bedilion.

22.     That Henegen therefore crafted [petitioner's] testimony to show that [petitioner's] memory was reliable and that unlike Bedilion's account of the crime, [petitioner's] statements were verifiable.

. . .

24.     That Jeanne Booth testified regarding [petitioner's] mental state while he was in jail pending trial, but that her testimony and her conversations with Henegen related not to [petitioner's] competency or the defense tactics but to [petitioner's] overall mental health and well being.

. . .

(Dkt. #64-2, Appendix, pp. 2-5).  The trial court also entered Conclusions of Law, which read in relevant part:

1.     That the narrow issue presented by the Court of Appeals' reference order is whether Henegen was ineffective for failing to request a competency evaluation of Martin.

2.     That under the controlling precedent of *In re Fleming*, 142 Wn.2d 853, 861, 16 P.3d 610 (2001), Martin bears the burden of establishing this claim by the preponderance of the evidence.

3.     To establish that counsel was ineffective, Martin must prove both parts of the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *Fleming*, 142 Wn.2d at 865. That test requires Martin to show that counsel's performance was deficient and that the alleged deficiency prejudiced the defense. *Fleming*, 142 Wn.2d at 865 (*citing Strickland*, 466 U.S. at 687).

4.     Regarding the performance prong, judicial scrutiny of a defense attorney's performance must be "highly deferential" in order to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. The reviewing court must judge the reasonableness of counsel's actions "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690; *see also* the Court of Appeals' Order referring petition at 7.

5.     In the context of the present claim, the Court must evaluate

REPORT AND RECOMMENDATION - 57

whether Henegen conducted a reasonable investigation that enabled him to make an informed decision regarding Martin's competency. *See Fleming*, 142 Wn.2d at 866.  The Court must further consider when in light of all the circumstances known to Henegen in 1997 and 1998, his conduct fell below an objectively reasonable standard.  The Court notes that "considerable weight should be given to the attorney's opinion regarding his client's competency and ability to assist the defense." *Seattle v. Gordon*, 39 Wn. App. 437, 442, 693 P.2d 741 (1985).

6.     RCW 10.77.060 requires that a competency hearing be held if there is a reason to doubt the defendant's competency.  To be competent to stand trial, the defendant must understand the nature of the charges against him, and he must be capable in assisting in his defense. *Fleming*, 142 Wn.2d at 862.

7.     The Court notes that the Court of Appeals has already determined that Martin's behavior at his court appearances before and during trial did not present sufficient reason to doubt his competency so as to require [the trial court] to have *sua sponte* ordered a competency evaluation.  Order referring petition at 8-10.

8.     Based on Henegen's additional private interaction and experiences with Martin during the more than 10 months that he represented him, the Court concludes that while it might have been prudent for Henegen to have contacted Dr. Cagle, the facts and circumstances known to Henegen, as set forth above, were not such as to create a reason to doubt Martin competency.

9.     The Court therefore concludes that Martin has failed to meet his burden of establishing that Henegen's performance was deficient.

10.     Although the lack of deficient performance is basis enough to deny Martin claim, the Court will also address prejudice.

11.     To establish prejudice, Martin must show by a preponderance of the evidence that there is a reasonable probability that the [sic] but for counsel's deficiency, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694.

12.     In the present context, the parties appear to agree, and the Court concludes, that prejudice would be established if there is a reasonable probability that if Henegen had requested a competency evaluation, Martin would have been found incompetent to stand trial.

13.     For the reasons discussed above, the Court concludes that Martin has failed to demonstrate a reasonable probability that he would have

REPORT AND RECOMMENDATION - 58

been found incompetent.  To the contrary, the Court concludes that the reasonable probability is that Martin would have been found competent. Martin thus fails to demonstrate prejudice as well.

14.     Because he has met his burden as to neither prong of the *Strickland* test, Martin's claim must fail.  Pursuant to the Court of Appeals' order, the Court therefore denies Martin's claim for relief.

(Dkt. #64-2, Appendix, pp. 6-9).

In affirming the state trial court's findings and conclusions, the Washington State Court of Appeals found in relevant part as follows:

Martin relies on *In re Personal Restraint of Brett* to support his claim that Henegen failed to adequately investigate his mental health problems.  In *Brett*, a jury convicted the defendant and sentenced him to death for aggravated first degree murder and first degree felony murder. *Brett*, 142 Wn.2d at 871.  Brett subsequently filed a personal restraint petition alleging ineffective assistance of counsel during the guilt and penalty phases of his trial. *Brett*, 142 Wn.2d at 871.  At the ensuing reference hearing, four medical experts testified that if defense counsel had investigated the defendant's history, counsel would have discovered that the defendant's disabilities seriously impaired his judgment, his ability to understand cause and effect, and ability to control his impulses. *Brett*, 142 Wn.2d at 874-76.  In addition, three legal experts testified that defense counsel should have sought legal help after he recognized that it would take two lawyers at least 400 to 500 hours to adequately prepare and effectively try the defendant's case. *Brett*, 142 Wn.2d at 876-77.  The legal experts also opined that Brett's counsel failed to conduct a reasonable inquiry into Brett's medical condition. *Brett*, 142 Wn.2d at 876-77.

The court faulted defense counsel for not (1) promptly seeking the appointment of counsel; (2) presenting a mitigation package to the prosecutor before he filed a death penalty notice; (3) promptly investigating relevant mental health issues; (4) seeking appointment of investigators; (5) seeking a timely appointment of qualified mental health experts; and (6) adequately preparing for the penalty phase by having relevant mental health issues fully assessed and by retaining, if necessary, qualified mental health experts to testify accordingly. *Brett*, 142 Wn.2d at 882.  The court held that while the failure to perform one of these actions alone was "insufficient to establish ineffective assistance of counsel, *the failure to perform the combination of these actions* establishes that defense counsel's actions in Brett's trial were not reasonable under the circumstances of the case." *Brett*, 142 Wn.2d at 882-83.

REPORT AND RECOMMENDATION - 59

The nature of Martin's claim and the facts distinguish *Brett*.  First, Martin does not claim that Henegen failed to investigate and prepare an insanity or diminished capacity defense, or prepare a mitigation argument.  Rather, he claims only that Henegen should have investigated his competence to participate in the trial.  And Henegen did investigate Martin's mental health history; he spoke with Martin's parents and family members, hired a private investigator to look into Martin's mental health issues, and obtained Dr. Cagle's records.  Unlike the defendant in *Brett*, Martin presented no expert testimony establishing that Henegen's failure to request a competency hearing was unreasonable under the circumstances. *See Brett*, 142 142 Wn.2d at 876. The circumstances, according to the trial court's findings, showed that Martin understood the nature of the proceedings and was able to fully assist his counsel in the defense.

We conclude that the findings support the trial court's conclusion that Henegen had no reason to question Martin's competence during trial preparation and trial.  Thus, Martin has not met his burden of establishing that henegen rendered ineffective representation. *See* [*In re Pers. Restraint of*] *Davis*, 152 Wn.2d [647, 679, 101 P.3d 1 (2004)].

(Dkt. #51, Exhibit 25, p. 6-8).  As noted above, the court of appeals also concluded that:

Moreover, even if we assume that Henegen should have asked for a mental evaluation of Matin's competence, Martin has not shown that the evaluator would have found him incompetent to stand trial.  Neither Martin's mother or stepfather offered any testimony that Martin did not understand the nature of the proceedings or was having difficulty working with his attorney.

(Id. at p. 8).

As noted above, petitioner claims in his second ground for *habeas corpus* relief that he was denied his right to effective assistance of counsel when defense counsel failed to adequately investigate whether he was competent to stand trial, failed to raise his competency with the trial court and failed to request a competency evaluation.  As discussed above, petitioner's claim in regard to defense counsel's alleged failure to investigate should be dismissed because it is both unexhausted and procedurally barred.[17]  The undersigned further finds petitioner has not shown

---

[17] Even if that claim had been properly exhausted, furthermore, the undersigned finds petitioner has failed to show defense counsel provided ineffective representation here.  As pointed out by the Washington State Court of Appeals, defense counsel investigated petitioner's mental health history by, for example, speaking with his parents and family members, hiring a private investigator to look into his mental health issues, and obtaining Dr. Cagle's records.  The

REPORT AND RECOMMENDATION - 60

the determination of the state courts that defense counsel did not provide ineffective assistance

for not raising the issue of petitioner's competency with the trial court and for not requesting a

competency hearing, was either "contrary to, or involved an unreasonable application of, clearly

established federal law," or "based on an unreasonable determination of the facts in light of the

evidence presented." 28 U.S.C. § 2254(d).

As noted above, defense counsel has wide latitude in deciding how best to represent his

_____

cases petitioner cites in support of his argument that defense counsel had a duty to conduct further investigation into his mental condition do not help him, as those cases are either inapposite or distinguishable on their facts. See Brewer v. Aiken, 955 F.3d 850, 857-58 (7th Cir. 1991) (failure to investigate for purposes of potential mitigation at death penalty phase, where even cursory investigation by defense counsel would have revealed that petitioner, among other things, had received several shock therapy treatments, had brain damage, was classified as mentally defective, and was evaluated as fixated at very dependent and infantile level); Hendricks v. Calderon, 70 F.3d 1032, 1043 (9th Cir. 1995) (deficient performance by defense counsel in failing to investigate possibility of mental impairment as mitigating factor in penalty phase hearing without supporting strategic reason, where counsel decided to plead for mercy, not because presenting such mitigation evidence would open door to damaging rebuttal, but because pleading for mercy was strategy counsel had pursued in only other penalty hearing in which he had participated); Seidel v. Merkle, 146 F.3d 750, 755-56 (9th Cir. 1998) (defense counsel failed to conduct any investigation into possibility of presenting defense related to defendant's obviously impaired mental state); Brown v. Sternes, 304 F.3d 677, 692 (7th Cir. 2002) (ineffective assistance in failing to investigate possible insanity defense, where, again among other things, defense counsel believed there was issue of sanity and had questions about defendant's competency due to difficulty in communicating with him and because of incident in which defendant yelled at her law clerk, and where co-defense counsel had observed first-hand defendant's uncontrolled and irrational outburst at trial); Douglas v. Woodford, 316 F.3d 1079, 1085-87 (9th Cir. 2003) (defense counsel's investigation into defendant's mental health was deficient, where counsel recognized possible option of psychiatric defense, defendant was experiencing severe claustrophobia in his jail cell, and counsel had difficult time getting him to concentrate on his defense because defendant was focused on his claustrophobia); see also Turner v. Duncan, 158 F.3d 449, 456-57, as amended on denial of rehearing and suggestion for rehearing en banc (9th Cir. 1998) (defense counsel's inexplicable failure to do even most minimal investigation and obtain psychiatric corroboration of defendant's defense could not be viewed as strategic decision).

Although there is a "duty to make reasonable investigations," defense counsel "may make a reasonable decision that particular investigations are unnecessary." Babbitt v. Calderon, 151 F.3d 1170, 1173, as amended (9th Cir. 1998) (citing Strickland, 466 U.S. at 691). Defense counsel, for example, "is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence." Id. at 1174 (citation omitted); see also Hendricks, 70 F.3d at 1040 ("[T]he duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed.") (citation omitted). In addition, "[t]o determine the reasonableness of a decision not to investigate, the court must apply 'a heavy measure of deference to counsel's judgments.'" Babbitt, 151 F.3d at 1174 (quoting Strickland, 466 U.S. at 691). Here, defense counsel's decision "not to explore further the question of [petitioner's] competence" than what the state court of appeals noted he already had done, fell "within the wide range of reasonable professional assistance" he is strongly presumed to have provided. Langford v. Day, 110 F.3d 1380, 1387-88, as modified on denial of rehearing and rehearing en banc (9th Cir. 1997). This is because, as explained above, "[t]he record furnishes no reason to believe that further" investigation into petitioner's mental health "would have created an issue regarding [petitioner's] mental competence." Id. at 1387 (emphasis in original).

REPORT AND RECOMMENDATION - 61

or her client, and there is a strong presumption counsel's performance was reasonable.  Also as noted above, to prevail on his ineffective assistance of counsel claim here, petitioner must show that but for defense counsel's alleged unprofessional errors, the result of the proceedings would have been different.  Petitioner has failed to do so.  In the Findings of Fact it issued after holding the two-day evidentiary hearing on remand, the trial court was not remiss in determining that the record showed petitioner could understand the proceedings being conducted, assist in his own defense and focus on the issues at hand, expressed no confusion to (and had no experiences of time loss or lack of recall in his dealings with) defense counsel, could understand an *Alford* plea, and consistently denied that he was guilty.  In addition, neither petitioner's mother nor his step-father gave any indication he was incompetent or unable to assist defense counsel, Dr. Kolden – who saw petitioner shortly after his arrival in prison – believed at the time that he was capable of understanding the proceedings and assisting in his own defense, petitioner himself testified both clearly and at length for nearly 100 pages (suggesting he was aware of what was occurring), and the record shows there was a reasonable probability petitioner would have been found competent to stand trial if he had been sent for a competency evaluation in 1997 or 1998.

The trial court and state court of appeals, furthermore, properly concluded petitioner's appearance in court both before and during trial did not provide defense counsel with sufficient reason to doubt his competency.  As pointed out by the trial court, although it may have been prudent for defense counsel to have performed some additional investigation into petitioner's mental health history, the facts and circumstances known to defense counsel – including the more than 10 months of private interaction he had with petitioner – were not such as to create a reason to doubt petitioner's competency.  Rather, as noted by the state trial court and  by the undersigned above, and as indicated by the state court of appeals in its decision, had petitioner

REPORT AND RECOMMENDATION - 62

been sent for a mental competency evaluation, there is a reasonable probability he would not have been found to be mentally incompetent.[18]

This case thus is very much like that in <u>Hoffman</u>, wherein the Ninth Circuit found there was "no reasonable probability that the [state trial] court would have found [the defendant] incompetent to stand trial" – even despite some concerns defense counsel had in that case (but unlike in this case) in regard to the defendant's ability to follow information and respond to it and express himself orally – in light of the fact that defense counsel noted the defendant "had some ability to describe what happened . . . and to discuss his role and the role of others . . . ," as well also to understand "the facts of the case against him, even if he did not always understand the law." 455 F.3d at 938.  On the basis of defense counsel's description of that defendant's capabilities, the Court of Appeals stated that it was "unlikely that counsel could have convinced the court that [the defendant] was incompetent to stand trial." <u>Id.</u>

The undersigned also finds highly relevant the findings of the Ninth Circuit in <u>Douglas</u>, which read in relevant part:

> Specifically, [the defendant's] trial attorney testified that he spent a considerable amount of time with [the defendant] preparing for trial and that he had absolutely no doubt that [the defendant] understood the charges against him and was able to assist in his defense. . . .[T]he psychologist who examined [the defendant] . . . verbally discussed [the defendant's] condition with [defense counsel] and told him that she believed [the defendant] was competent.  [The defendant] did not exhibit any strange behavior in the courtroom, nor did the prosecutor or trial judge express any concerns about his competence. . . .

> Finally, perhaps the most convincing evidence of [the defendant's]

---

[18] Again, petitioner's arguments – e.g., that defense counsel demonstrated a disregard for conspicuous pieces of evidence in the record, had actual and constructive notice of petitioner's mental status and failed to ascertain the possible ramifications of his psychiatric impairment – goes to the issue of his mental health symptoms and well-being, and not to that of his mental <u>competency</u>, which is a legal issue separate and distinct from the former, and which is a much different, and higher, standard that petitioner must, but has not, met in this case, to prevail on his ineffective assistance of counsel claims.

REPORT AND RECOMMENDATION - 63

competence . . . is the clerk's transcript of the [proceedings] . . . [The defendant] was coherent, responsive and quite articulate throughout the proceeding. . . . [W]e find this transcript to be strong evidence that [the defendant] was competent at the time of his trial . . .

316 F.3d at 1094.  Except for the specific verbal opinion concerning competency – although the testimony from Dr. Kolden at the evidentiary hearing comes close – these facts are substantially similar to those in this case, and provide further support for the state courts' determination that defense counsel did not provide ineffective assistance in failing to raise the issue of competency with the state trial court or request a competency hearing.[19]

---

[19] Contrast with the facts of <u>Burt v. Uchtman</u>, 422 F.3d 557 (7th Cir. 2005), wherein the Seventh Circuit noted:

. . . [the defendant's] attorneys had access to additional information suggesting he was incompetent than did the trial court.  [The defendant's] attorneys both admitted they were unaware of a then-existing [state] statute that provided a mandatory fitness hearing for any defendant taking psychotropic medication at the time of trial. . . .

[The defendant's] attorneys were aware of several pieces of information beyond what was available to the trial court that should have alerted them to the need for a new competency hearing.  First, counsel learned that [defendant] desperately wanted to smoke and that smoking was prohibited at the county jail where he was being held during trial.  [Defense counsel's] affidavit states: "[The defendant] insisted on changing his plea to guilty largely because he was not permitted to smoke in the . . . [c]ounty [j]1ail, and was anxious to return to prison where smoking was permitted."  That [the defendant's] desire to have a cigarette, in counsel's mind, trumped his desire to defend himself against capital murder charges should have suggested to counsel that [the defendant] was not thinking clearly and not making rational decisions to assist in his defense. . . .

. . .

Counsel had ample opportunity to observe [the defendant's] behavior both in and out of the courtroom.  [Defense counsel's] affidavit mentioned [the defendant's] "frequent swings of mood," which he attributed in part to a belief that the county jail was administering [the defendant's] medication on an irregular schedule.  [The defendant's] mood swings were so pronounced that [defense counsel] "would meet with [the defendant] every morning before court to evaluate his mental state."  It "often happened" that [the defendant] "demonstrated belligerent or explosive behavior," such as threatening others in the courtroom.  [Defense counsel] "was continually afraid that [the defendant] would commit violent acts in court, and made constant efforts to appease him."  Finally, [defense counsel] believed that "[the defendant] did not fully comprehend legal advice and that his behavior throughout the trial, particularly his decision to change his plea to guilty, was not rational."

[Defense counsel's] fears that [the defendant] would become violent were supported by [one doctor's] records, which were provided to defense counsel at their request.  [Later, the defendant] reported to [another doctor] that he wanted to die and threatened to "kill someone in the court room" if he was given a life sentence as opposed to a death sentence. . . . [W]hen combined with the other evidence discussed above, [the latter doctor's] report of [the defendant's] mental condition and hope for his own execution should have raised alarms for counsel.

VI.    Petitioner Was Not Denied His Right to Effective Assistance of Counsel by Defense
       Counsel's Failure to Present Testimony by Dr. Cagle or Another Mental Health Expert at
       the Hearing on the Admissibility of Petitioner's Statement to the Police or at Trial to
       Explain Why That Statement Was Not Reliable

The prohibition of the Fifth and Fourteenth Amendment "against compelled self-incrimination" requires that "custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." Edwards v. Arizona, 451 U.S. 477, 481-82 (1981) (citing Miranda v. Arizona, 384 U.S. 436, 479 (1966)). A defendant "may waive effectuation of these [Miranda] rights," provided, however, that "the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. A waiver, therefore, "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." Edwards, 451 U.S. at 482. This is an "objective inquiry" that "depends in each case 'upon the [totality of the] particular facts and circumstances surrounding that case, including the background, experience, and conduct of the

---

. . .

Neither the [government] nor [the defendant's] former attorneys provided any conceivable tactical reason for counsel's decision not to request a . . . competency hearing. The only reason [defense counsel] gave in his affidavit was that neither he nor [the defendant's other attorney] was aware that [the defendant] was entitled to a mandatory hearing under the then-existing [state statute]. . . .

. . .

. . . The [State] Supreme Court failed to acknowledge much of this evidence. Specifically, the court did not mention [defense counsel's] statement in his affidavit that "[the defendant] did not fully comprehend legal advice and that his behavior throughout the trial, particularly his decision to change his plea to guilty, was not rational." Nor did it mention [defense counsel's] assertion that [the defendant's] primary motivation for pleading guilty was so he could be returned to state prison where smoking was permitted.

The court likewise completely disregarded [the] opinion [of one doctor] that [the defendant's] brain damage made him particularly susceptible to the adverse effects of the psychotropic drugs he was taking. [The doctor] opined that [the defendant's] psychiatric history and medication regimen warranted a competency hearing, and the [State] Supreme Court simply ignored his report. . . .

Id. at 567-68.

REPORT AND RECOMMENDATION - 65

accused." Id. (citations omitted); Davis v. United States, 512 U.S. 452, 459 (1994); Arizona v. Fulminante, 499 U.S. 279, 285-86 (1991) (citations omitted).

Accordingly, a defendant "who knowingly and voluntarily waives his right[s] to [remain silent and to the presence of] counsel after having [those rights] explained to him has indicated his willingness to deal with the police unassisted." Davis, 512 U.S. at 460-61; see also Moran v. Burbine, 475 U.S. 412, 421 (1986) (defendant may waive effectuation of rights conveyed in Miranda warnings provided waiver is made voluntarily, knowingly and intelligently).  There are "two distinct dimensions" to the Court's inquiry into a defendant's purported waiver:

> . . . First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequence of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

Moran, 475 U.S. at 1141 (citations omitted); see also United States v. Frank, 956 F.2d 872, 877 *as amended on denial of rehearing and rehearing* en banc (9th Cir. 1992); Derrick v. Peterson, 924 F.2d 813, 820, *as amended* (9th Cir. 1991).

Needless to say, "[a]n involuntary or coerced confession is inadmissible." Frank, 956 F.2d at 876.  "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." Derrick, 924 F.2d at 817.  Thus, "'coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment.'" Id. at 818 (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)); Pollard v. Galaza, 290 F.3d 1030, 1033 (9th Cir. 2002) (confession is involuntary only if police use coercive means to undermine suspect's ability to exercise his free

REPORT AND RECOMMENDATION - 66

will); United States v. Orso, 266 F.3d 1030, 1039 (9th Cir. 2001), *abrogated on other grounds by* Missouri v. Seibert, 542 U.S. 600 (2004) (defendant's mental state alone does not make statement involuntary; rather, coercive conduct by police must have caused them to be made). As the Supreme Court itself has emphasized, "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Connelly, 479 U.S. at 164 (mental condition by itself should never dispose of inquiry into constitutional voluntariness).

That is, "a confession is only involuntary under the fourteenth amendment if the police use coercive activity to undermine the suspect's ability to exercise his free will." Derrick, 924 F.2d at 818. "[P]ersonal characteristics of the defendant," furthermore, "are constitutionally irrelevant absent proof of coercion." Id. (citation omitted). "Consequently, [a defendant's] age [or, as noted above,] mental capacity are relevant to [the] due process inquiry only if [the reviewing court] first conclude[s] that the police's conduct was coercive." Id. In determining voluntariness, however, the courts do look at such factors as the defendant's state of mind, the physical environment in which he or she gave the statement, the manner in which the defendant was questioned, and the tone of voice used in and the promises or representations made by the person questioning the defendant. Pollard, 290 F.3d at 1033; see also Frank, 956 F.2d at 877 (relevant factors include age, experience, education, background, and intelligence). Further, "questioning which becomes psychologically coercive may result in an involuntary statement." Pollard, 290 F.3d at 1034.

On the other hand, there exists "a presumption against waiver," with the prosecution bearing "the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his *Miranda* rights." United States v, Garibay, 143 F.3d 534, 536 (9th

Cir. 1998) (citing <u>Connelly</u>, 479 U.S. at 168; <u>see also</u> <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464

(1938) (courts indulge every reasonable presumption against waiver of fundamental rights, and

do not presume acquiescence in loss thereof).  As with the court's inquiry into the voluntariness

of a defendant's confession, "[t]he determination of whether there has been an intelligent waiver

of right to counsel [by the defendant also] must depend, in each case, upon the particular facts

and circumstances surrounding that case, including the background, experience, and conduct of"

the defendant. <u>Johnson</u>, 304 U.S. at 464.

A confession that is voluntary will still be deemed inadmissible if the defendant "lacks

the mental capacity to make a knowing and intelligent waiver of the right to remain silent and the

right to counsel during police interrogation." <u>Frank</u>, 956 F.2d at 876.  A knowing and intelligent

waiver is one that has "'been made with a full awareness of both the nature of the right being

abandoned and the consequences of the decision to abandon it.'" <u>Id.</u> (quoting <u>Moran</u>, 475 U.S. at

421).  As pointed out by petitioner, "the question of whether a *Miranda* waiver was knowing and

intelligent traditionally has embraced concerns apart from police activity, including whether the

defendant was too mentally ill to understand the warnings." <u>United States v. Bradshaw</u>, 935 F.2d

295, 299 (D.C. Cir. 1991) ("[P]olice coercion is a necessary prerequisite to a determination that a

waiver was *involuntary* and not as bearing on the separate question [of] whether the waiver was

knowing and intelligent.") (emphasis in original).  Accordingly, "a *Miranda* waiver [need not] be

caused by police misconduct to be deemed not-knowing." <u>Id.</u> at 300.

Petitioner claims he was denied his right to effective assistance of counsel when defense

counsel failed to present testimony by Dr. Cagle, his treating psychiatrist, or by any other mental

health expert, at the pretrial hearing held on the admissibility of the statement he made to the

police after he was arrested, and at trial to explain why his statement to the police was unreliable.

REPORT AND RECOMMENDATION - 68

The Washington State Court of Appeals addressed both of these claims in its decision denying in part petitioner's personal restraint petition as follows:

> [Martin] contends Henegen was ineffective for failing to call Dr. [Cagle] or another expert to testify at the CrR 3.5 hearing.  Generally, whether to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel. State v. Byrd, 30 Wn. App. 794, 799, 638 P.2d 601 (1981).  [Martin] argues that because the court commented on the lack of medical evidence that [Martin]'s mental illness prevented him from making a knowing waiver of his right to remain silent, the court would have necessarily suppressed the evidence had their [sic] been such testimony.  But the record does not support this interpretation.  Moreover, [Martin] has made no showing that Dr. Cagle or any other witness would have testified that [Martin]'s mental illness would have created such a difficulty, or that even if there were such an expert opinion it would result in suppression in the absence of evidence of any coercive police tactics. See Collorado [sic] v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed. 2d 473 (1986).  [Martin] has shown neither deficient performance nor prejudice regarding counsel's conduct at the CrR 3.5 hearing.
>
> . . .
>
> [Martin] also fails to make the necessary showing that counsel's performance was deficient or caused him prejudice when counsel declined to call Dr. Cagle or another expert witness at trial to support his claim that the confession was unreliable.  Nothing in the materials from Dr. Cagle that [Martin] has presented to this court suggests that because [Martin] had learned to falsely confess to his abusive stepfather to avoid beatings, he would have falsely confessed to police to terminate a lengthy interview.  Although [Martin] cites People v. Lopez, 21 Colorado Journal 117, 946 P.2d 478 (1997), that case is clearly distinguishable because there the testimony of the expert would have gone directly to voluntariness, whereas in this case, [Martin] has proffered no testimony by Dr. Cagle or anyone else who would opine that his statements to police were involuntary. See State v. Turner, 143 Wn.2d 715, 730, 23 P.2d 499 (2001) (where defendant fails to present evidence that an expert would have testified that his mental state affected his actions he has failed to show deficient performance).  And, as this court noted during the direct appeal in upholding the trial court's decision to limit evidence surrounding the childhood abuse, the circumstances of that abuse were markedly dissimilar from the police interrogation in issue in this case, so there is no showing that the jury would have discounted the confession in any event.

(Dkt. #51, Exhibit 15, pp. 10-12).  In its ruling denying review, the Washington State Supreme

REPORT AND RECOMMENDATION - 69

Court Commissioner found in relevant part:

> Mr. [Martin] . . . contends the [state court of appeals] applied the wrong standard of prejudice when considering whether counsel was ineffective in failing to call a mental health expert.  Mr. [Martin] urges that counsel should have presented an expert at two points: at the suppression hearing to show that his police statements were involuntary, and at trial to show that his confession was unreliable.  But Mr. [Martin] recites the wrong standard himself.  He asserts that he need only show a reasonable probability that the outcome "might" have been different had counsel presented such evidence.  But the standard is whether there is a reasonable probability the outcome "would" have been different. *State v. McFarlnd*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).  The error must be such as to undermine confidence in the outcome. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).  Mr. [Martin] does not demonstrate that counsel's failure to present expert testimony reaches this level.  He seems to suggest it would have been sufficient for his expert to opine that he suffered from schizophrenia and psychotic delusions.  But without evidence linking those conditions to Mr. [Martin]'s confession, the jury would have had no reasonable basis to conclude the confession was unreliable.  As a personal restraint petitioner, Mr. [Martin] must show he was actually and substantially prejudiced by constitutional error. *In re Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994).  He does not do so.

(Id., Exhibit 18, pp. 3-4).  Again, the undersigned agrees with the state courts that petitioner has not met his burden of establishing defense counsel provided ineffective assistance for failing to obtain the testimony of Dr. Cagle or another medical health expert at either the pre-trial hearing on admissibility or at trial.

As discussed above, there is a strong presumption that defense counsel's performance fell within the wide range of professional assistance, and counsel has wide latitude in making tactical decisions and in deciding how best to represent his or her client.  The standard of review that the courts employ here, furthermore, is highly deferential to such decision-making.  In addition, also as discussed above, to prevail on his ineffective assistance of counsel claim, petitioner is required to affirmatively prove prejudice as a result of defense counsel's alleged errors.  In particular, he must show there is a reasonable probability that, but for those errors, the result of the proceeding

REPORT AND RECOMMENDATION - 70

would have been different.

As the state courts found, petitioner has failed to do so here.  First, there is nothing in the medical or other evidence in the record – or in the additional records submitted by petitioner with his *habeas corpus* petition for that matter – to indicate, as the state courts found, that Dr. Cagle or any other mental health expert would have testified that petitioner could not make, or would have had difficulty making, a knowing, intelligent and voluntary waiver of his <u>Miranda</u> or other constitutional rights.  For the same reason, petitioner has failed to establish there is a reasonable possibility that even if defense counsel had sought and obtain such testimony, the state trial court would have suppressed his statement to the police or that it would have changed the results of the trial and/or verdict of the jury.[20]

Petitioner argues, as he did before the state courts, that because the trial court had stated in denying defense counsel's motion to suppress his statement, that no evidence was presented of his mental condition, the medication he was taking or what effect that medication would have on his understanding of his rights or other aspect of the police interview, and thus that it had nothing to indicate petitioner's mental status affected that understanding, the failure of defense counsel to present such evidence was objectively unreasonable.  But, once more, petitioner equates the fact

---

[20] In regard to the latter, petitioner argues that had the trial court found suppression of the statement as the result of testimony from Dr. Cagle or another mental health expert was proper, there is a reasonable probability the outcome of the trial would have been different, because his confession likely was the most damaging and probative evidence against him in this case, and because the state did not come forth with any forensic evidence to link him to the crime and instead relied on inconsistent and unreliable witnesses.  But as noted by respondent, there still "was abundant and significant [inculpatory] evidence above and beyond [petitioner's] confession to law enforcement that would have assured [his] conviction." (Dkt. #64, p. 36).  For example, petitioner also confessed the murder to his father, and two other witnesses testified as to petitioner's participation in that crime.  <u>See</u> (<u>Id.</u> at pp. 37-45 (quoting Dkt. #51, Exhibit 34, pp. 371, 373-79, 383-85, 909, 911-13, 919-20, 1069-71)).  While petitioner, also as noted by respondent, attempts to impeach the veracity of the above testimony with respect to his father and one of the other witnesses, he has failed to demonstrate there is a reasonable probability that the absence of his confession to the police would have overcome all of that testimonial evidence, particularly in light of the corroborating testimony of the third witness.  In other words, petitioner still has not shown there is a reasonable probability that suppression of his confession to the police – even if Dr. Cagle or a different mental health expert had testified at trial – the outcome thereof would have been different.

REPORT AND RECOMMENDATION - 71

of mental illness with the presence of mental health symptoms that necessarily would cause him to have difficulty understanding his rights or what was going on at the time.  As discussed above, though, the evidence in the record simply does not support that view.[21]  As such, petitioner has failed to show the state courts' decisions on these claims were either "contrary to, or involved an unreasonable application of, clearly established federal law," or were "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

---

[21] In essence, petitioner is asking this Court to speculate that had the state trial court and the jury had the benefit of Dr. Cagle's testimony or that of another mental health expert, it is likely they would have deemed his statements to the police to have been not knowingly, intelligently or voluntarily made.  But such speculation falls far short of the kind of showing that the term "reasonable probability" generally requires.  That defense counsel may have had a less than complete understanding of the specific psychiatric disorder with which Dr. Cagle diagnosed him – a finding of fact not made by the state court, nor which, the undersigned notes, is necessarily supported by the evidence in the record – does not remove petitioner's argument from the realm of speculation.  So too does the undersigned find lacking in terms of evidentiary support in the record, petitioner's assertion that the voices he heard, including that belonging to Jimmy, "were actively interfering with his decision making processes on the day of his arrest." (Dkt. #61, p. 78).  As discussed above, however, despite petitioner's mention of the voice of Jimmy during their interview of him, neither of the police detectives who interrogated him saw anything in his manner, presentation or ability to communicate to suggest that he was not lucid or coherent, or that he had any trouble in terms of his awareness or understanding of his rights or what was going on at the time.

Petitioner's further assertion that Dr. Cagle or another mental health expert, would have articulated the extent to which his "active psychosis" interfered with his ability to understand the rights that he waived and the consequences thereof, again simply is insufficient to establish constitutional error on the part of defense counsel here. See (id.).  Rather, petitioner must come forth with evidence that there is a reasonable probability that Dr. Cagle or another mental health expert would have testified that his mental illness indeed did interfere with his understanding of those rights and the consequences of waiving them.  Again, petitioner has not done so.  The presence of a mental illness or impairment such as the "active psychosis" petitioner refers to, furthermore, is not alone sufficient to find a waiver was not made voluntarily, knowingly and intelligently. See Henry v. Kernan, 197 F.3d 1021, 1027 (9th Cir. 1999) (waiver found to be involuntary where statement was incoherent, confused and disjointed, and throughout interview defendant was shaken, frightened and crying); United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993) (Miranda rights could be voluntarily waived, even where defendant was hospitalized, on medication and in pain, as he was coherent, gave responsive answers and was able to remember accurately, even though he was in critical condition, as he was neither unconscious or comatose); Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir. 1989) (although intoxicated, defendant was not incapacitated, as he was able to drive, obey officers' orders and cooperate in conversing with them, and thus surrounding circumstances were insufficient to overcome defendant's free will and cause his statement to be product of anything other than rational mind); United States v. Martin, 781 F.2d 671, 674 (9th Cir. 1986) (despite suffering painful injuries and being under medical care, including undergoing schedule of painkilling narcotics, defendant was awake, spoke freely and was relatively coherent during questioning, all of which were not sufficient to overbear his will to resist questioning or impair his rational faculties).

REPORT AND RECOMMENDATION - 72

1

VII.    Petitioner Was Not Denied His Right to Effective Assistance of Counsel by Defense
2       Counsel's Failure to Present Evidence of Petitioner's Mental Illness as a Mitigating
        Factor at Sentencing

3       In his fifth ground for federal *habeas corpus* relief, petitioner claims defense counsel's

4  failure to present evidence of his mental illness as a mitigating factor at his sentencing deprived

5  him of his right to effective assistance of counsel.  With respect to this claim, the Washington

6  State Court of Appeals found in relevant part in its decision denying in part petitioner's personal

7

8  restraint petition:

9              [Martin] acknowledges that Henegen did not present defenses of
       insanity or diminished capacity because [Martin] has steadfastly maintained
10     that he did not commit the crime.  [Martin] does not challenge that strategy as
       to the conduct of the trial, but contends that after trial, there was no longer any
11     reason for Henegen not to put [Martin]'s mental health information before the
       court as a mitigating circumstance.  It is unnecessary to consider whether
12     Henegen's performance was deficient in this regard because [Martin] clearly
       is not prejudiced.
13
               [Martin]'s direct appeal included a challenge to the offender score
14     calculation.  The State conceded that remand for resentencing was required
       and this court accepted the concession as well taken.  Accordingly, [Martin]
15     received a new sentencing hearing.  At that hearing [Martin]'s new counsel
       included in her arguments and submissions materials from [Martin]'s current
16     psychiatrist and counselor.  Counsel also discussed Dr. Cagle's diagnosis and
       asked the court to consider [Martin]'s mental health and sentence him to the
17     low end of the newly calculated standard range.  Accordingly, the
       resentencing has clearly rendered moot [Martin]'s claim of prejudice arising
18     from the original sentencing hearing.

19

20  (Dkt. #51, Exhibit 15, pp. 14-15).  In affirming that decision, the Washington State Supreme

21  Court Commissioner in his decision denying review found in relevant part:

22             . . . Mr. [Martin] argues the [state court of appeals] erroneously
       rejected his claim that counsel was ineffective in failing to present evidence of
23     mental illness as a mitigating factor at sentencing.  The [state court of appeals]
       determined that Mr. [Martin]'s challenge to the original sentencing was
24     rendered moot by the resentencing hearing, where counsel presented mental
       health information.  Mr. [Martin] urges, however, that the trial court refused to
25     consider this information.  But whatever the case, the evidence of Mr.
       [Martin]'s mental illness does not show that, at the time of the crime, he
26     suffered from an impaired capacity to appreciate the wrongfulness of his

REPORT AND RECOMMENDATION - 73

conduct or to conform his conduct to the requirements of the law, so as to constitute a mitigating factor. Former RCW 9.94A.390(1)(e) (1996), *recodified as* RCW 9.94A.535(1)(e). He thus does not demonstrate prejudice.

(Id., Exhibit 18, p. 4). Again, the undersigned finds the state courts' determination of this claim to be free of error.

It is important to once more point out that there is a strong presumption that defense counsel's performance fell within the wide range of professional assistance, that counsel has wide latitude in making tactical decisions and in deciding how best to represent his or her client, and that the standard of review the courts employ here is highly deferential to such decision-making. To prevail on his ineffective assistance of counsel claim, furthermore, petitioner must affirmatively prove prejudice as a result of defense counsel's alleged errors, and, in particular, he must show there is a reasonable probability that, but for those errors, the result of the proceeding would have been different.

As noted by the state courts, the medical and other evidence in the record fails to show that, at the time of the crime for which he was convicted, he suffered from an impaired capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, so as to constitute a mitigating factor. While the above discussion of that evidence has been focused on the issue of petitioner's competency to stand trial, there also is no indication as to any impairment in his capacity to appreciate the nature of or account for his actions in regard to that crime. Petitioner, therefore, has not met the prejudice prong of the Strickland standard. Accordingly, petitioner has failed to establish ineffective assistance of counsel even in light of the fact that the trial court found it could not consider the evidence of petitioner's mental health

REPORT AND RECOMMENDATION - 74

submitted to it at re-sentencing.[22]

As such, here too, petitioner has not shown the state courts' decisions on his claim here were either "contrary to, or involved an unreasonable application of, clearly established federal law," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

VIII.    Petitioner Was Not Denied His Right to Effective Assistance of Counsel When He Was Represented at Trial by an Attorney Whose Law Firm Had Previously Represented a Key Prosecution Witness

Because the function of defense counsel "is to assist the defendant," he or she owes his or her client "a duty to avoid conflicts of interest." Strickland, 466 U.S. at 688.  Counsel, therefore, has "an ethical obligation to avoid conflicting representations" of more than one client, "and to advise the court promptly when a conflict of interest arises during the course of trial." Cuyler v. Sullivan, 446 U.S. 335, 346-47 (1980); see also generally Washington Rules of Professional Conduct 1.7(a) ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest.") (emphasis added).  Accordingly, a defendant who demonstrates that defense counsel "actively represented conflicting interests" among multiple clients – and that those conflicts "actually affected the adequacy of" the representation he or she received – has "established the constitutional predicate" for a claim of ineffective assistance of counsel. Cuyler, 446 U.S. at 349-50.  Such is not the case here.

"[J]oint representation of conflicting interests is inherently suspect." Mickens v. Taylor, 535 U.S. 162, 168 (2001).  But, as noted above, defendants have the burden of showing that "'a

---

[22] The undersigned further notes that even if the issue of deficient performance had been addressed directly by the state courts, they likely would have found petitioner failed to meet that prong of the Strickland prong as well.  As discussed above, the medical and other evidence in the record was insufficient to create a reasonable doubt in the mind of either the trial judge or defense counsel concerning petitioner's competency to stand trial.  That evidence, also as just discussed above gave no indication that petitioner lacked the capacity to appreciate the wrongfulness of his conduct or account for his actions.  Defense counsel, therefore, would not have known, nor should he have been aware of, any mitigating circumstances in that regard.

REPORT AND RECOMMENDATION - 75

conflict of interest actually affected the adequacy of his representation.'" Id. (quoting Cuyler, 446 U.S. at 348-49).  In addition, while a trial court has the "duty to inquire into the propriety of a *multiple representation*," this is so "only when 'the trial court knows or reasonably should know that a *particular* conflict exists,'" and "is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict." Id. at 168-69 (citing and quoting Cuyler, 446 U.S. at 347-349) (emphasis added).  As the Supreme Court went on to state in Mickens, it is only where there exists an actual conflict involving multiple, concurrent representation that the constitutional predicate for ineffective assistance of counsel has been established:

> . . . "[U]ntil . . . a defendant shows that his counsel *actively represented*
> conflicting interests, he has not established the constitutional predicate for his
> claim of ineffective assistance." . . . [We have] stressed the high probability of
> prejudice arising from multiple concurrent representation, and the difficulty of
> proving that prejudice. . . . Not all attorney conflicts present comparable
> difficulties.  Thus, the Federal Rules of Criminal Procedure treat concurrent
> representation differently, requiring a trial court to inquire into the likelihood
> of conflict whenever jointly charged defendants are represented by a single
> attorney (Rule 44(c)), but not when counsel previously represented another
> defendant in a substantially related matter, even where the trial court is aware
> of the prior representation. . . .

Id. at 175 (emphasis in original) (internal citations omitted); see also Foote v. Del Papa, 492 F.3d 1026, 1030 (9th Cir. 2007) (noting Supreme Court in Mickens explicitly limited its prior holding in Cuyler to conflicts involving joint representation); Earp, 431 F.3d at 1184.

In addition, unless the defendant has objected to a multiple representation, and "the trial court fails to afford" him or her "the opportunity to show that potential conflicts impermissibly imperil his [or her] right to a fair trial," the "reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel." Cuyler, 446 U.S. at 348.  But rather, as noted above, to prevail on an ineffective assistance of counsel claim, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected"

the performance of defense counsel. Id.  That is, the mere "possibility of conflict is insufficient

to impugn a criminal conviction." Id. at 350.

"To show an actual conflict [of interest] resulted in an adverse effect" on the performance

of defense counsel, furthermore, the petitioner "must demonstrate that some plausible alternative

defense strategy or tactic might have been pursued but was not and that the alternative defense

was inherently in conflict with or not undertaken due to" counsel's "other loyalties or interests."

Foote, 492 F.3d at 1029-30 (citation omitted).  This requisite showing has not been met here.

Petitioner, in his sixth ground for *habeas corpus* relief, claims defense counsel provided

ineffective assistance by representing him at trial, while his law firm had previously represented

one of the prosecution's key witnesses.  In terms of factual support for that claim, petitioner

specifically states in his petition:

> . . . [Defense counsel] labored under a conflict of interest because he
> was a member of a law firm that had previously represented . . . Delores
> Bedilion.  Ms. Bedilion had pleaded guilty to a reduced charge, rendering
> criminal assistance, in the murder of Mr. Johnson in exchange for testifying at
> Mr. Martin's trial.  When this conflict of interest was discussed at a pretrial
> hearing it was disclosed that Ms. Bedilion had sought representation from
> [defense] counsel's law firm regarding an attempt to have her civilly
> committed.  The trial court ruled that no actual conflict of interest existed and
> allowed Mr. Martin's trial counsel to continue his representation.
>     This conflict of interest adversely affected [defense] counsel's
> representation.  Although Ms. Bedilion was a key fact witness who had made
> conflicting statements to authorities and who had admitted to using and
> dealing methamphetamine, counsel for Mr. Martin indicated to the court that
> he would not inquire into her mental health history and, in fact, did not discuss
> her mental health problems during cross-examination.

(Dkt. #34, pp. 13-14).

The Washington State Court of Appeals rejected this claim on the following basis:

> [Martin]'s attorney, Henegen, belonged to a law firm that had been
> directed to represent Bedilion when she had been civilly detained for a mental
> evaluation in 1997.  [Martin] argues that this relationship created a conflict
> that led Henegen to choose not to cross-examine Bedilion during the trial

REPORT AND RECOMMENDATION - 77

about her own mental health issues.  [Martin] contends that he has therefore shown a conflict that adversely affected Henegen's performance.

The Sixth Amendment right to the counsel includes the right to the assistance of an attorney who is free from any conflict of interest in the case. State v. Dhaliwal, ___ Wn.2d ___, 79 P.3d 432, 436 (2003).  To demonstrate a conflict of interest on the part of his or her counsel, the defendant bears the burden of proving that there was an actual conflict that adversely affected his or her lawyer's performance. Dhaliwal, 79 P.3d at 439.

[Martin]'s claim vastly oversimplifies the record.  The topic of whether the situation regarding Bedilion created a conflict arose when the parties were discussing possible conflicts regarding other witnesses.  Henegen informed the court that he had checked the witness list and found that his firm had had contact with Bedilion for purposes of representing her in a mental commitment proceeding.  The commitment did not go forward, however, and the firm was never formally appointed, although an attorney from Henegen's firm briefly met with Bedilion.

The court initially indicated that it did not see a conflict under the circumstances, but instructed Henegen to investigate whether Henegen's associate had ever reviewed Bedilion's mental health records.  At the next hearing, Henegen informed the court that his firm had never received any mental health reports or psychological reports.  The associate had never reviewed that type of information, had made no investigation into Bedilion's mental condition and did not discuss her mental condition with her when they met.  The attorney's only contact had been to learn that Bedilion had reached an agreed resolution with the mental health authorities that did not require a court hearing.  On these facts, [Martin] has not established an actual conflict of interest.

Moreover, even if [Martin] had established a conflict, he has clearly failed to meet his burden of showing an adverse effect on Henegen's performance.  [Martin] speculates that Henegen ultimately conceded that the State's motion in limine regarding Bedilion's mental health records had merit because of his feelings of loyalty to her.  Again, [Martin] overlooks the record.

Henegen filed a motion seeking disclosure of Bedilion's records at the first motion during which he discussed the possibility that he might have a conflict, and he continued to press the issue vigorously over the course of several hearings.  Ultimately, in light of the State's concession that Bedilion was using the drug Paxil at the relevant times, the court ruled that the defense had not made the threshold showing necessary to penetrate the applicable statutory privileges. RCW 18.19.020(3); 5.60.060.  [Martin] has made no attempt to show that the court's ruling was incorrect.  When the State later filed briefs in support of its motion in limine, both Henegen and counsel for [Martin]'s co-defendant Iaea conceded that the State's motion had merit.  Again, [Martin] has made no showing that the concession by either counsel was not well-taken.

Moreover, the trial record shows Henegen very vigorously cross-

REPORT AND RECOMMENDATION - 78

examined Bedilion over the course of two days, not only as to her use of Paxil, but also as to her use of illegal drugs. Henegen successfully persuaded the court to admit into evidence a letter in which Bedilion referred to her mental health issues, and he thoroughly cross-examined Bedilion with regard to inconsistencies in her various statements and her own guilty plea to rendering criminal assistance. Henegen also used other witnesses to portray Bedilion in a very unfavorable light. On the record, [Martin] has failed to make a threshold showing of any adverse affect upon his counsel's performance regarding witness Bedilion.

(Dkt. #51, Exhibit 15, pp. 12-14). The Washington State Supreme Court Commissioner in turn ruled in relevant part as follows:

Mr. [Martin] . . . contends that the [state court of appeals] erred in finding no actual conflict of interest or adverse effect on counsel's performance stemming from the fact that counsel's firm had briefly represented one of the chief witnesses in a prior commitment proceeding. *See State v. Dhaliwal*, 150 Wn.2d 559, 570, 79 P.3d 432 (2003) (defendant must show actual conflict and adverse effect on counsel's performance). But Mr. [Martin] demonstrates no obvious or probable error in the [state court of appeals's] treatment of this issue. Nor, in the context of this personal restraint petition, does Mr. [Martin] show he was actually and substantially prejudiced or that the proceedings suffered from a fundamental defect that inherently resulted in a complete miscarriage of justice. [*In re*] *Lord*, 123 Wn.2d [296, 303, 868 P.2d 835 (1994)].

(Id., Exhibit 18, p. 4).

The undersigned finds petitioner has not shown the state courts' decisions on his claim here were either "contrary to, or involved an unreasonable application of, clearly established federal law," or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Indeed, the record – including defense counsel's thorough cross-examination of Ms. Bedilion at trial – fully supports the determination of the state courts that defense counsel's law firm's prior, brief representation of Bedilion in an unrelated matter had no adverse impact on defense counsel's representation of petitioner. As discussed above, furthermore, to prevail under an ineffective assistance of counsel claim on this issue, petitioner, who did not object at trial, had to prove the existence of an actual conflict involving active and

REPORT AND RECOMMENDATION - 79

1    multiple, concurrent representation.  He has failed to do so.

2                                        CONCLUSION

3           For the reasons set forth above, petitioner has failed to show that he is entitled to federal

4    *habeas corpus* relief.  Accordingly, the Court should deny his petition.

5                            CERTIFICATE OF APPEALABILITY

6           A *habeas corpus* petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may

7    appeal a district court's dismissal of his *habeas corpus* petition only after obtaining a Certificate

8    of Appealability ("COA") from either a district or circuit court judge. See 28 U.S.C. 2253(c)(3).

9    A COA should be granted, however, only if petitioner makes a "substantial showing of the denial

10   of a constitutional right."  28 U.S.C. § 2253(c)(3).  To obtain a COA under 28 U.S.C. § 2253(c),

11   it must be shown that (1) reasonable jurists could debate whether – or agree that – the petition

12   should have been resolved in a different manner, or (2) the claims presented in the petition were

13   adequate to deserve encouragement to proceed further. Slack v. McDaniel, 120 S.Ct. 1595, 1603-

14   04 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

15          Nothing in the record before the Court supports a conclusion that reasonable jurists could

16   debate whether or agree that the petition should have been resolved in a different manner, or that

17   the claims presented therein were adequate to deserve encouragement to proceed further.  The

18   COA, therefore, should be denied.

19                                        OBJECTIONS

20          Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure ("Fed. R. Civ.

21   P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and

22   Recommendation to file written objections thereto. See also Fed.R.Civ.P. 6.  Failure to file

23   objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474

REPORT AND RECOMMENDATION - 80

U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set this matter for consideration on **August 13, 2010**, as noted in the caption.

DATED this 28th day of July, 2010.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 81